OPINION OF THE COURT
Chief Judge Cooke.
This case presents the question whether defendant’s right to counsel was violated when, after defendant retained counsel in connection with his appearances before a Grand Jury investigating fraud in the nursing home industry, the prosecutor arranged to record defendant’s conversations with a nursing home operator during which defendant offered a kickback. In the circumstances of this case, no such violation occurred. The order of the Appellate Division, sustaining the conviction for three counts of perjury in the first degree, should therefore be affirmed.
Defendant and his partner, Ben Solomon, owned Oceanside Institutional Industries, Inc., a laundry and linen supply company they founded in 1974 that serviced a number of Long Island nursing homes and health-related facilities. In early 1976, the office of the Special Prosecutor, appointed to investigate abuses in the operation of nursing homes and related industries, obtained information indicating that defendant had paid kickbacks at least to the owner-operator of the Parkview Nursing Home in an effort to obtain that facility’s business for Oceanside. Defendant was called before a Nassau County Grand Jury on March *503 23, 1976, where he appeared without counsel but with a grant of immunity. During relatively brief questioning, defendant denied being a party to any kickback arrangement with Parkview.
In April, 1977, defendant again was subpoenaed to appear before a Grand Jury, shortly before which he retained attorney Morris Cohen to represent him. Cohen informed Special Assistant Attorney-General Richard Miller that he represented defendant and that communications with defendant were to be made through him. At this time, the prosecutor possessed the testimony of Parkview’s administrator that defendant had been paying kickbacks to that home’s operator. Armed with this information, Miller informed both defendant and Cohen prior to questioning that he believed defendant had perjured himself during his first Grand Jury appearance. Again with a grant of immunity, defendant responded to the prosecutor’s more extensive questioning with denials of kickback payments to any nursing home or any knowledge about the practice.
In June, 1977, the prosecutor learned that General Diaper Service, Inc., defendant’s former employer, regularly paid kickbacks to obtain or retain nursing home customers for its linen supply business. The information about General Diaper also indicated that defendant, responsible for the company’s day-to-day operations, would know which homes had been parties to a kickback scheme. At this point, the prosecutor possessed sufficient evidence to support an indictment against defendant for perjury during his second Grand Jury appearance.
During this same period, Alex Sreter, the operator of two nursing homes, contacted the Attorney-General’s office in the hope of obtaining a favorable disposition of criminal charges he was aware were about to be brought against him and his mother arising out of their operation of the nursing homes. Sreter provided information about corrupt practices in the health care industry and eventually entered into a written plea agreement under which he agreed to co-operate further and to make restitution for money wrongfully obtained from the Medicaid program in exchange for a plea of guilty to income tax evasion, a misde *504 meaner, in satisfaction of the grand larceny charges that were to be brought and a report to the court of his cooperation.
Sreter became a key figure in this case when he informed the prosecutor that defendant’s company, Oceanside, had been servicing Nassau Nursing Home for the nine months prior to Sreter’s decision to co-operate. Sreter had neither demanded nor received kickbacks from Oceanside, but had heard that defendant’s partner, Solomon, made such arrangements with others. Shortly after Sreter’s offer to cooperate, Solomon called him to discuss the possibility of Oceanside servicing Sreter’s other home, the Van Doren Nursing Home. They agreed to meet on July 11, 1977. Sreter reported the upcoming meeting to the prosecutor’s office and consented to be equipped with a recording device for this and subsequent meetings.
Defendant accompanied Solomon to the July 11 meeting at which both sought to obtain the Van Doren business. Offers from competitors were discussed in general terms. Defendant and Solomon offered low prices as an inducement to Sreter, who responded that price was not everything in the other offers received. The parties agreed to continue the discussion in the future.
During subsequent meetings between defendant and Sreter only, which also were recorded, defendant offered cash kickbacks for the Van Doren account and explained his method of arranging the payments. In an attempt to overcome Sreter’s apparent reluctance to accept such an arrangement because of the extensive State investigations, defendant assured Sreter that the illicit transaction would not be revealed to prosecutors, that defendant had had similar deals with only a small number of other operators, and that such deals would continue to be part of the health care industry despite law enforcement efforts. Defendant made clear that he was very careful, would never get caught and would never reveal the other parties to an arrangement. Sreter finally refused the kickback offer and declined to give Oceanside the Van Doren business. He also terminated the Nassau account. The last conversation took place on October 13, 1977.
*505 Meanwhile, the prosecutor had decided not to indict defendant for perjury for his April, 1977 testimony before the Grand Jury, but to give him an opportunity to testify truthfully and aid the investigation of industry abuses. To that end, defendant was subpoenaed to appear before a third Grand Jury, which he did on October 17, 1977. Defendant was not advised that his conversations with Sreter had been recorded. Again informed of the nature of the Grand Jury inquiry and with a grant of immunity, defendant was asked numerous questions concerning kickback deals in the industry involving Oceanside and General Diaper and whether he had ever offered or discussed kickback arrangements with named individuals, including Sreter. Once again, defendant denied personally knowing of any such deals in the industry or ever having offered a kickback.
Based on his responses, defendant was indicted on four counts of perjury. Counts one, two and four related to questions based upon the recorded Sreter conversations; count three related to defendant’s testimony concerning the kickback practices of his former employer, General Diaper. Defendant unsuccessfully moved before trial for dismissal of the indictment and suppression of the Sreter conversations, among other things. After a jury trial, defendant was acquitted of count three but found guilty on the other counts. Following affirmance of his conviction by the Appellate Division, defendant was granted leave to appeal to this court.
Defendant raises numerous arguments in support of reversal. Of primary note is defendant’s broad assertion that the Sreter tapes should have been suppressed because the prosecutor violated his right to counsel by arranging to record the conversations. The question, however, may be better framed as whether retention of counsel in connection with a Grand Jury inquiry precludes investigative techniques that elicit in a noncustodial setting not a confession, but a plan to commit a new crime of the type then under scrutiny. Contrary to defendant’s assertion, neither the State nor Federal right to have the presence of counsel during police encounters include the right to have counsel present when a criminal enterprise is being planned or *506 executed. Nor can it be used to insulate an immunized Grand Jury witness from prosecution for perjury founded upon statements made during that criminal activity.
Defendant’s argument that provisions of the United States Constitution require suppression of the Sreter conversations is unpersuasive. Indeed, inasmuch as no charges had been filed against defendant and he was not subjected to custodial interrogation, defendant had no constitutional right to be represented by counsel (see Kirby v Illinois, 406 US 682; Rhode Is. v Innis, 446 US 291; Miranda v Arizona, 384 US 436). Defendant’s reliance on Massiah v United States (377 US 201) is wholly misplaced. There, it is true, the Supreme Court ruled that admissions obtained through the use of an informant following indictment, in a noncustodial setting, violated the defendant’s Sixth Amendment right to counsel. Massiah was recently reaffirmed in United States v Henry (447 US 264) where postindictment admissions to an informant-fellow prisoner were found to have violated the constitutional guarantee.
The critical circumstance in both Massiah and Henry, for present purposes, was that the admissions obtained through prosecutorial agents were used as evidence to convict the defendants of prior crimes for which they had already been indicted at the time the admissions were elicited. Here, in contrast, the perjury of which defendant has been convicted had not yet occurred; of course no charges with respect thereto had yet been filed, and the authorities could have been under no constitutional obligation to commence proceedings at that time (see Hoffa v United States, 385 US 293, 310). Use of undercover operatives to investigate criminal activity of a suspect prior to commission of the particular crime of which the suspect is subsequently charged simply does not violate the Sixth Amendment guarantee (see United States v Henry, 447 US 264, 272, supra; Hoffa v United States, 385 US 293, supra; see, also, United States v Kenny, 645 F2d 1323, 1338; United States v Sikora, 635 F2d 1175, cert den 449 US 993; United States v Zazzara, 626 F2d 135, 138).
Nor do any decisions of this court support the novel theory advanced by defendant. This State’s right to counsel *507 has developed out of concern and respect for the right of one accused of criminal conduct to place an advocate between himself and the vast law enforcement resources of the State (People v Skinner, 52 NY2d 24; People v Cunningham, 49 NY2d 203; People v Rogers, 48 NY2d 167; People v Hobson, 39 NY2d 479).
To that end, this court has recognized that in certain instances the right to counsel may be said to have indelibly attached; an uncounseled waiver of counsel will be ineffective. Thus, actual representation on a pending charge renders interrogation about that charge improper in the absence of a waiver of counsel in the presence of an attorney (People v Hobson, 39 NY2d 479, supra). That prohibition applies as well upon commencement of formal criminal proceedings (People v Samuels, 49 NY2d 218; People v Settles, 46 NY2d 154), or after there has been a request for the assistance of counsel during custodial interrogation (People v Cunningham, 49 NY2d 203, supra). And where an individual is actually represented on a pending charge, custodial interrogation concerning unrelated criminality is proscribed where the police know of that representation (People v Rogers, 48 NY2d 167, supra) or know of the pending charge (People v Smith, 54 NY2d 954; People v Bartolomeo, 53 NY2d 225). Only recently, in People v Skinner (52 NY2d 24, supra), this court took the further step of prohibiting interrogation in a precommencement, noncustodial setting after counsel retained specifically on the matter under investigation had instructed the police not to question the defendant in the attorney’s absence.
Defendant argues that Skinner compels suppression of his statements during the Sreter conversations. We disagree. The defendant in Skinner was suspected of murder and had been contacted repeatedly by police investigating the crime. He had retained counsel in response and thereby “unequivocally indicated that he felt himself unable to deal with the authorities without legal assistance” (id., at p 32). The subsequent questioning by the police in the absence of counsel required suppression of the resulting confession. In the circumstances there presented, whether the criminal action had been formally commenced or whether the defendant had been interrogated in a custo *508 dial setting could not be considered controlling.* Critical was that the defendant was represented on the very matter about which he was questioned, a past crime.
Nothing in Skinner suggests that the content of the recorded conversations here is protected by this State’s right to counsel. It is true that defendant, to the prosecutor’s knowledge, retained counsel in connection with his Grand Jury appearances and that counsel admonished against direct contact between the prosecutor and defendant. Defendant’^ argument might be persuasive if the recorded conversations had revealed only defendant’s submission to a bald attempt by Sreter to obtain incriminating evidence of defendant’s prior criminal dealings. But that was not the case. The first meeting was arranged for business reasons and was a product of Solomon’s initiative, not Sreter’s. And it was defendant who offered to pay Sreter illegal kickbacks in an effort to obtain his business. During the solicitation of this new crime and in his attempt to bring it to fruition, defendant himself revealed his previous kickback activities. That he unwittingly made the illegal offer to a person acting on behalf of the government is a risk defendant undertook at the outset. This State’s right to counsel neither could reduce that risk nor give defendant a license to commit perjury before the Grand Jury.
The right to counsel is a shield against what may well be the coercive influences of the State. The rule’s salutary function cannot be distorted to immunize one represented by an attorney against investigative techniques that capture a new crime in progress (see People v Clark, 41 NY2d 612). Defendant, however, would do just that and have this court recognize, in effect, a right to the presence of counsel while an individual commits, plans or solicits the commission of a new crime merely because the individual has retained counsel during the investigation of earlier criminality. We decline to do so (cf. People v Middleton, 54 NY2d *509 474 [decided herewith]) and thus conclude that there was no error in the denial of defendant’s motion to suppress the conversations.
Defendant’s remaining contentions have been examined and those preserved for review are found to be without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed.

 The Skinner court relied on People v Townes (41 NY2d 97) and People v Roberson (41 NY2d 106) in each of which the right to counsel had been abridged when the State used at trial incriminating statements made by the defendant, in the absence of assigned counsel, to a member of a civilian complaint review board during the latter’s investigation of claimed misconduct by the arresting officer.