Wachtler, J.
(dissenting). The police should not be prohibited from using an informant to obtain information from a person represented by counsel when the police are trying to find and possibly rescue a missing person. The rule precluding the police from questioning a person represented by counsel in order to solve a crime known to have been committed, or to gather evidence for conviction of such a crime, has not been applied, and should not be extended to hinder police officers actively engaged in attempting to provide emergency assistance to those who are or may be in danger. When a person has been reported missing under unusual circumstances the police may reasonably proceed on the assumption that the person may be in danger or in need of police assistance. It should not be for the courts to say that at a certain point, to be revealed after the event, intensive rescue efforts should cease because the police should, as a matter of law, abandon all hope of finding the missing person alive.
In this case the defendant murdered Linda Velzy, an 18-year-old college student, while he was released on bail awaiting trial on an indictment charging him with sodomy and unlawful imprisonment of another young woman. He admitted his guilt on three separate occasions: first, to an erstwhile friend, Arthur Hitt, who was assisting the police in locating the missing student; second, at the time of his arrest while attempting to dispose of his victim’s body; and third, at the police station shortly after his arrest. Additional evidence of his guilt was discovered in his car pursuant to a warrant based entirely on the defendant’s conversations with Hitt. The defendant made a pretrial motion to suppress the evidence claiming some unspecified violation of his constitutional rights. The trial court denied the motion and the jury found the defendant guilty of murder.
*181 The Appellate Division held that the defendant’s third confession at the station house should have been suppressed, but found the error harmless in light of the other evidence of guilt and thus affirmed the conviction.
On appeal to this court the defendant urges that all of this evidence, except the dead student’s body, should be suppressed. He argues that the police should not have approached him or accepted the aid of his confidant, Arthur Hitt, to determine what if anything the defendant knew of Miss Velzy’s disappearance because the police knew that the defendant had recently been indicted for abducting and sexually molesting another young woman in the area, and therefore knew that on that pending charge he had an attorney, who in fact had, at the defendant’s request, directed the police to discontinue their efforts to obtain information from the defendant concerning the missing person. It is contended by the defendant, and the majority, that our prior cases construing the State constitutional right to counsel mandate suppression of the evidence under these circumstances.
In my view the Appellate Division was correct and the conviction should be affirmed. A careful reading of the facts and applicable law shows that the defendant’s argument calls for an extension and, in my view, an unwarranted extension of the right to counsel into an area in which it has never been held to apply, and should not be held to be applicable.
The most important fact in the case is that Linda Velzy disappeared on December .9, 1977 and was not found until January 1, 1978. When informed of her mysterious disappearance on December 10 the Oneonta police opened a “file 5” which, it was noted at the hearing, is the official designation for a missing persons investigation. They also enlisted the aid of the State Police and the campus security force and established a special command post to co-ordinate their efforts to find Miss Velzy.
The search continued throughout December. Large numbers of police officers searched the surrounding woods, helicopters were employed, as well as bloodhounds, and apparently even spiritualists. The police also interviewed *182 over a hundred people including the defendant. Thus accepting Hitt’s offer to determine what, if anything, the defendant might know about Miss Velzy’s disappearance and present whereabouts was just one of the many leads pursued by the police.
All of the defendant’s statements to Hitt were made during this first stage of the investigation, while the police were attempting to locate and possibly rescue a missing person. The only statements the police obtained from the defendant after it was determined that a crime had been committed in connection with the young woman’s disappearance were the second and third confessions.
Although the police naturally considered it possible that she might be dead, they had no evidence supporting that theory until the day before the defendant’s arrest when the defendant informed Hitt that he had killed her. The corpus delicti of the crime was not established until January 1, 1978 when the defendant was arrested dragging her body to a newly dug grave. Prior to that time the police did not know whether she was dead or alive, sick or well, voluntarily absent or criminally abducted and thus were conducting a missing persons investigation, not a homicide case.
A missing persons investigation is not a criminal investigation, as the majority opinion assumes. This is not just a semantic difference. It is a constitutionally recognized distinction (see, e.g., People v Mitchell, 39 NY2d 173), and a point of the utmost significance in this case.
The primary function of the police is to protect the public by preventing crime and rendering emergency assistance to those whose lives or safety may be in jeopardy. After a crime has been committed the police assume their secondary role of determining who is responsible and gathering evidence for prosecution.
The State constitutional rule prohibiting the police from questioning a person represented by counsel in the absence of counsel, limits the investigative techniques available to the police (see, e.g., People v Middleton, 54 NY2d 474). In some cases this merely delays the investigation, in others it may completely frustrate it. Thus far this type of restriction has been imposed on the police only in cases where *183 they are investigating a crime known to have been committed in order to solve the crime or obtain evidence which would insure a conviction (see, e.g., People v Hobson, 39 NY2d 479 [robbery reported]; People v Settles, 46 NY2d 154 [police officer killed]; People v Singer, 44 NY2d 241 [young woman found murdered]; People v Garofolo, 46 NY2d 592 [young woman murdered]; People v Rogers, 48 NY2d 167 [robbery reported]). Significantly, in People v Skinner (52 NY2d 24), which the majority believes to be dispositive in this case, the police found the victim’s dead body on June 25, 1975 and obtained the damaging admissions from the defendant on March 10,1977 nearly two years later. Thus that was also a case in which the victim had been found and any information the police might obtain from the defendant could only serve to aid them in their secondary role of establishing criminal responsibility for a crime known to have been committed some time ago.
In short, the critical distinguishing factor between our prior cases and the one now before us is this: In none of our prior cases was there any possibility that the life or safety of an innocent third party, perhaps in imminent danger, might depend upon the success of the police investigation. Limiting the power of the police to investigate a crime known to have been completed, by precluding them from obtaining information from a person who has retained an attorney, may result in the guilty party going free. Imposing the same restrictions on the police when they are attempting to rescue a person potentially in danger may, and in many cases undoubtedly will, have the added consequence of contributing to the death or injury of the victim.
Well-founded judicial reluctance to interfere with the emergency functions of the police has served as the basis for recognizing limitations on other constitutional rights.
Thus, for instance, the Miranda rule does not require the police to pause and advise an individual of his rights when the officers are merely investigating a suspicious and possibly criminal incident but have not yet determined whether there has been a “definite” and “concluded” crime (People v Huffman, 41 NY2d 29; People v Greer, 42 NY2d 170). The “emergency doctrine” applied in Fourth Amendment cases is the most well-developed example. It was *184 adopted by this court in People v Mitchell (39 NY2d 173, supra) where the police had conducted a “room-by-room” search of a hotel to locate a missing maid, who was eventually found dead in the defendant’s room. The police concededly had no warrant and no probable cause to believe the defendant had committed a crime. However, we noted (at p 178) that the “maid’s disappearance was a mystery and it was not known whether she had been stricken with some illness, suffered an accident or possibly fallen victim to a crime. Each of these three alternatives was possible”. In upholding the police officers’ actions we held that the police have the right to enter and investigate in an emergency inherent in the nature of their duties as peace officers and noted (at p 180) that “ ‘[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would greatly endanger their lives or the lives of others’ (Warden v Hayden, 387 US 294, 298-299).”
Recognizing that the police should not be bound by the unusual restrictions imposed by this State’s constitutional right to counsel when they are conducting a missing persons investigation is consistent with constitutional principles generally and is justified by the demands of that type of investigation. The need to make wide-ranging inquiries is no less important than the need to make sweeping search when the police are attempting to locate a missing person. Delay or frustration of the investigation can be equally fatal for the missing person whether it is occasioned by unrealistic restrictions on the right to search or on the right to inquire. Indeed, the broadened power of the police to search for a missing person is of little value if the authorities do not have the corresponding power to obtain leads by making inquiry of all segments of the community. When a person has disappeared under unusual circumstances, law-abiding citizens or those without attorneys are not the only ones, or even the most likely, to have useful information.
As is the case with other constitutional rights, there are limits to the rule prohibiting the police from obtaining statements from a person who has retained or requested the assistance of counsel (People v Middleton, 54 NY2d *185 474, supra; People v Ferrara, 54 NY2d 498). In the Middleton case where the defendant, arrested for a traffic infraction, offered the arresting officer a $10,000 bribe after invoking the right to counsel, we concluded that further inquiry by the police as to the reason for the bribe was not prohibited, noting that a contrary holding would (at p 482) “unrealistically * * * limit investigatory procedures relating to bribe offers”. It is even more unrealistic, if not completely irresponsible, to require police officers attempting to locate a missing person, potentially in danger, to abandon a promising lead simply because it would require the use of an informer to obtain information from a person represented by counsel.[1]
The case now before us is an appropriate one to recognize that a defendant cannot employ the right to counsel to frustrate or delay police officers searching for a missing person. Although we now know, as the defendant did from the beginning, that the missing student had been killed or fatally injured on December 9, this was not known by the police on December 21 when they formally accepted Hitt’s offer to attempt to learn if the defendant knew anything about her disappearance. All the authorities knew at that point was that, when last seen, Miss Velzy had indicated that she would probably walk or hitchhike back to the campus; that the defendant had recently been arrested for abducting and sexually assaulting another hitchhiking coed and that he had asked his friend Hitt for a false alibi for *186 the evening of December 9. This, of course, was a lead worth following but it obviously did not provide solid proof or even probable cause to believe that the defendant was responsible for Miss Velzy’s disappearance or that she was dead. Missing persons, even those who have been abducted, are often found alive long after their disappearance, as we know from the Patti Hearst case, and others of lesser notoriety.[2] The defendant’s attempt to obtain an alibi for the night of the disappearance was nothing more than a suspicious circumstance. But even if the police had firmer grounds to suspect him, his involvement in Miss Velzy’s disappearance would not necessarily establish a homicide or rule out other possibilities. Significantly the pending indictment charged the defendant with sodomy and unlawful imprisonment, suggesting that at some point the girl that he had abducted in that case must have been released alive. We do not know how much time elapsed in that case but it is interesting to note that on the trip to Binghamton the defendant had informed Hitt that “he wanted to pick up another girl and take her off in a cabin or something back in the woods out of the way and keep her there for a couple of weeks and then just do away with her”.
The record is not deficient, nor is there any need to remit for additional findings, simply because it does not reveal the subjective intent of the officers involved in the investigation or has lead some to speculate that they were only intent on obtaining evidence against the defendant.[3] With three police forces and so many individuals actively involved in the search over several weeks, it is unlikely that *187 we will find unanimity or any persistently held beliefs. With the limited information available to the police any individual belief would be little more than a hunch. The only practical approach for the courts is to recognize that when a person has disappeared under mysterious circumstances, the police may reasonably proceed on the assumption that he or she may be in danger or in need of police assistance. It does not matter whether all, most, or only some, of the officers assigned to the investigation are fully committed to that belief, whether their supervisors share it, or whether a Judge asked to assist in the case entertains the belief. Until the person has been found, or conclusive evidence of death has been presented there is no reason for the police to abandon all hope of rescue. Neither should the courts say, with hindsight, that the police should have conducted the investigation as if no hope remained. Thus the record as it stands is sufficient and supports our view that the emergency doctrine is applicable to this case.[4]
The issue presented by the facts in this case cannot be ignored or avoided because of any perceived failure on the part of the People to urge that we adopt an emergency exception to the State constitutional right to counsel. Strict requirements with respect to the sufficiency of the record and appellate arguments of counsel have not previously deterred us from reaching the merits when the State’s *188 constitutional right to counsel is involved.[5] In any event the defendant’s contention that his right has been violated necessarily involves consideration of the scope and limits of the right. A defendant’s constitutional rights cannot be extended by default. If the People had completely neglected to submit a brief, or had been precluded for failure to present a timely brief (22 NYCRR 500.7 [b]), we would not be bound to accept the defendant’s arguments simply because they were unopposed.[6] Indeed even if the People had expressly conceded the defendant’s point, that would not “relieve us from the performance of our judicial function * * * [or] require us to adopt the proposal urged upon us” (People v Berrios, 28 NY2d 361, 366-367; see, also, People v Lewis, 26 NY2d 547, 550; People v McGowen, 42 NY2d 905, 907; Sibron v New York, 392 US 40, 58; Young v United States, 315 US 257, 258).
In sum, when the police are investigating a report that a person has disappeared under mysterious circumstances, and has not yet been found, the State constitutional right to counsel should not prohibit the police from approaching any member of the community who may have useful information, including those who have a record of prior convictions or pending charges or who have retained counsel to immunize themselves from police inquiries. A missing persons investigation is not a homicide case when no body has been found and there was no reason why the police in this case should have been bound to conduct the investigation as if Miss Velzy’s life or safety did not depend upon the success of their efforts.
The defendant’s conviction should be affirmed.
Chief Judge Cooke and Judge Fuchsberg concur with Judge Jones; Judge Meyer concurs in result in a separate opinion; Judge Jasen dissents and votes to affirm in *189 another opinion; Judge Wachtler dissents and votes to affirm in an additional opinion in which Judge Gabrielli concurs.
Order reversed, etc.

. Contrary to the majority’s holding, the principle recognized in the Middleton and Ferrara cases provides an additional basis for admitting the defendant’s conversations with Hitt. When the defendant requested Hitt to give false information to the police he committed the crime of criminal solicitation (see Penal Law, §§ 100.00-100.15), because he was asking Hitt to commit the crime of hindering prosecution (Penal Law, §§ 205.50-205.65), known at common law as an accomplice after the fact (La Pave & Scott, Criminal Law, § 66, p 523). Statements made in furtherance of a criminal act are not the type of statements entitled to protection under the State Constitution (People v Middleton, supra; People v Ferrara, supra).
Although as the majority notes this new crime was complete when the defendant made the request, it does not follow that there was no need for the police to utilize Hitt to further investigate the matter. This argument overlooks the fact that evidence of the crime would not be complete until it could be shown that some earlier crime had been committed which the defendant was attempting to cover up (see Penal Law, §§ 205.50-205.65, 100.00-100.15). Indeed the degree or precise nature of the defendant’s offense would depend upon the nature of the earlier crime (Penal Law, §§ 100.00-100.15). Nor is it realistic to focus on the intent of the police in such an investigation. A police officer investigating to determine whether a defendant’s request for a false alibi is an attempt to cover up some earlier crime, cannot do so without also intending to uncover the earlier crime.

. The example chosen by Judge Meyer in his concurring opinion is not apt or helpful. In this case we are concerned with a potential victim missing approximately 20 days, and not with an historical curiosity which occurred over 50 years ago.

. The subjective intent of police officers is relevant in Fourth Amendment cases where the emergency doctrine is employed to physically intrude upon the defendant’s person or property, without a warrant, and, indeed without probable cause (see, e.g., People v Mitchell, 39 NY2d 173). It has not been considered relevant in cases involving emergencies where the police conduct is less intrusive. For instance, when the police merely converse with the defendant in order to determine the nature of suspicious, possibly dangerous and presumably criminal activity, the police officer’s “primary purpose” in making the inquiry has played no part in determining whether it was proper to dispense with Miranda warnings (see, e.g., People v Huffman, 41 NY2d 29; People v Greer, 42 NY2d 170). The same rule should apply in this case where the police were merely attempting to determine, by conversations with the defendant and through their agent Hitt, whether the defendant possessed information concerning Miss Velzy’s mysterious disappearance.

. The view expressed in Judge Meyer’s concurring opinion, that it would be unfair to the defendant to recognize the emergency limitation on his rights at this stage is, at least, ironic. First, it should be emphasized that the defendant never submitted any facts in support of his motion to suppress. He simply claimed, without elaboration, that his statements should be suppressed because they “were involuntary and otherwise obtained in violation of the defendant’s rights under the United States Constitution and otherwise”. Thus he presented no factual basis for suppression or factual issues entitling him to a hearing and was only afforded a hearing because the People consented to grant him one. Secondly, at the suppression hearing which extends through two volumes of the record, the defendant made no legal argument whatsoever in support of his conclusory contention that his rights had been violated, made no attempt to identify for the court or disclose to his adversary the legal basis for the relief he sought, and therefore never afforded the People an opportunity to respond at the hearing to the arguments he has presented on this appeal. As a general rule the defendant’s failure to present the issue in the trial court would preclude the defendant from raising it on this appeal. However, once again, the defendant has been granted a special dispensation because the right to counsel issue happens to be one of those rare points that need not be preserved.
In short, the defendant has been afforded more of a hearing, both in this court and the trial court, than he would be generally entitled to under the law. The only unfairness is to the People because the conviction is being set aside for their “failure” to respond to an argument the defendant never made.

. When the record shows that this right has been violated we have consistently granted relief even though the defendant has failed to properly preserve the issue in the trial court (see, e.g., People v Samuels, 49 NY2d 218, 221; People v Charleston, 54 NY2d 622) or has neglected to argue the point on appeal (People v Carmine A., 53 NY2d 816). Similarly, we should deny relief if the record shows that there has been no violation even though the People may not perceive that the defendant’s arguments would extend the right into areas where it would not be applicable.

. Despite the fact that I write in dissent for three Judges, including myself, it is plain from Judge Meyer’s concurring opinion that at least four Judges of this court are now prepared to recognize the emergency doctrine in principle.