OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant was indicted for extortion and usury and arraigned on March 14, 1983. He was remanded. On April 28 the Appellate Division ordered bail to be set at $350,000 cash or surety.
During this period of incarceration, the defendant came into contact with another inmate, Carlos Lacen. According to Lacen, who was a Federal informant incarcerated due to his inability to make bail on a robbery charge, the defendant solicited Lacen to kill the alleged victim of the extortion with which the defendant is charged, thus eliminating the victim as a witness. According to the defendant, it was Lacen who attempted to convince the defendant that the witness should be killed. In any event, during this period, the defendant provided Lacen with a written description of the witness’ probable location and daily routine. On April 28 the FBI notified the District Attorney responsible for *136 prosecuting Lacen of Lacen’s allegations concerning the defendant. Lacen had not been an informant for the State.
The allegation was passed on to another Assistant District Attorney, Mr. Wade, who was responsible for the prosecution of this indictment. Wade, in turn, brought the information to the attention of the heads of the Rackets Bureau, including the Deputy Chief of the Rackets Bureau, Assistant District Attorney Seth Rosenberg. The responsibility of investigating the alleged homicide conspiracy between the defendant and Lacen devolved upon Rosenberg who avers that Wade was insulated from all information obtained by Lacen concerning the instant charges against the defendant.
On April 29 the defendant was transferred from the cell in which he was previously lodged to a new cell block. His new cellmate was the informant, Lacen. The prosecution avers that the transfer was coincidental, arising from the Correction Department’s concern about the activities of the defendant and the inmates in the adjoining cells. The defendant contends that the transfer was not coincidental, but was designed to increase the informant’s contact with the defendant. The defendant and Lacen were cellmates for a week from April 29 to May 6, 1983. The defendant avers that during this period, “Lacen probed into the subject matters of the discussions that [the defendant] had had with [his] attorney”, to which the defendant, “freely responded concerning conversations with counsel and told him everything about [the] case”.
On May 6 Lacen was transferred to the custody of the New York City Police Department as a material witness. The previous day, May 5, Lacen had been debriefed by Rosenberg concerning Lacen’s contacts with the defendant and the alleged homicide conspiracy. Rosenberg avers that nothing was said by Lacen concerning the defendant’s conversations with his attorney. On May 8 the defendant telephoned Lacen and the call was recorded. The defendant avers that he attempted to dissuade Lacen from harming the witness. The prosecution avers that the defendant informed Lacen that he expected to be released on bail within a few days and would contact Lacen.
*137 On May 10 the Appellate Division modified its order limiting the bond to an insurance, instead of a personal recognizance, bond. On May 14 and 15 the defendant and his attorney, according to the defendant’s affidavit, discussed the possibility that Lacen was an informant attempting to “entrap” the defendant.
On May 16 Lacen received a call from a man identified as “Sal” who stated he was “calling for Angelo” and wanted “Albert to go to sleep”. The witness’ first name is Albert.
On May 18 the defendant’s attorney contacted Wade and inquired whether any informant or police agent had spoken to the defendant following the attorney’s retainer. Wade denied that there was any such contact, which was a knowing misrepresentation. On May 20 the defendant called Lacen and stated that the witnesses were “no harm” to him and that his case would be handled by his lawyer. The call was recorded by both parties.
The defendant has moved to dismiss the instant extortion and usury indictments on grounds of prosecutorial misconduct and on the basis of an alleged gross interference with the attorney-client relationship based upon the defendant’s revelations to Lacen regarding defense strategy and conferences with his attorney.
Insofar as the conversations related to an alleged plot to kill a witness material to the prosecution of the indictment, there was no violation of the Sixth Amendment. As the Court of Appeals held in People v Ferrara (54 NY2d 498, 508), “The right to counsel * * * cannot be distorted to immunize one represented by an attorney against investigative techniques that capture a new crime in progress * * * [There is no] right to the presence of counsel while an individual commits, plans or solicits the commission of a new crime merely because the individual has retained counsel [regarding] earlier criminality.” (Cf. People v Middleton, 54 NY2d 474, 479-480.)
Whether the alleged plot was initiated by Lacen, as the defendant claims, or by the defendant is an issue to be decided within the context of any charges which may arise based upon those conversations.
*138 Insofar as the defendant’s conversations with Lacen involved the defense of the instant indictment, the drastic remedy of dismissal is not warranted, even assuming that the Sixth Amendment was deliberately violated by a design to place the defendant in contact with an informant.
“Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation * * * [W]hen before trial but after the institution of adversary proceedings, the prosecution has improperly obtained incriminating information from the defendant in the absence of his counsel, the remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence”, (United States v Morrison, 449 US 361, 364-365.) There may be cases of prosecutorial abuse so egregious that traditional remedies of evidentiary exclusion are unavailing to meet the constitutional infringement. (United States v Morrison, supra, p 365, n 2; see People v Isaacson, 44 NY2d 511, 520-522.) However, the defendant has a burden to show that the claimed violation has prejudiced the quality or effectiveness of the defendant’s legal representation, has resulted in the prosecution’s having a stronger case against him or has produced some other prejudice to the defense. “[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.” (United States v Morrison, supra, p 365.)
There is no per se rule that the Constitution has been offended whenever an informant learns information about the anticipated defense of a pending indictment, without regard to the circumstances under which the information was obtained. (See Weatherford v Bursey, 429 US 545, 552.) The prosecutor who supervised Lacen and the investigation into the alleged homicide conspiracy here has averred that the prosecutor who was assigned to the instant case was shielded from any information regarding the defense revealed by the defendant to the informant in their conversations. The court need not assume that the prosecutors have misrepresented the facts, or that any revelation of information concerning the defendant or his attorney’s view of the case communicated to a prosecutor through an *139 informant necessarily has the potential for detriment to the defense or benefit to the prosecution solely because the prosecutor who has debriefed the informant in connection with a suspected new offense is employed by the same office as the prosecutor assigned to try the pending indictment. (See Weatherford v Bursey, supra, p 557.) The court notes that the claims of the defendant in his affidavit, submitted in support of his motion, are entirely conclusory in that regard.
Unless the information gleaned by the informant in regard to the pending indictment becomes the subject of testimony upon trial of the indictment, or leads to other evidence in regard thereto or is otherwise used to the detriment of the defense or to benefit the prosecution, such as by prior knowledge of defense strategy, the defendant has no constitutional claim under the Sixth or the Fourteenth Amendments. (Weatherford v Bursey, supra, pp 554-556.)
If the defendant is able, based upon the recorded conversations to which he has access, to make a colorable claim of prejudice to the defense of the instant indictment arising from the prosecution’s use of the defendant’s revelations to the informant, then the defendant would be entitled to a judicial determination whether such information was unlawfully obtained and whether the information, in fact, prejudices his opportunity for a fair trial. (Cf. Weatherford v Bursey, supra, pp 551-552.) Upon the present papers, however, it appears that the informant was not solicited by the prosecution to obtain any information from the defendant but, rather, that the informant approached the authorities with allegations of a serious ongoing offense. It further appears that subsequent contacts between the informant and defendant were designed to elicit evidence of the suspected new crime and not to invade the confidentiality of the attorney-client relationship in regard to the pending case. Finally, the defendant has not alleged any specific prejudice or any tangible danger of specific prejudice, from any information revealed by the defendant regarding his pending case incidental to the alleged plot to eliminate the State’s key witness.
*140 The motion to dismiss the indictment is, accordingly, denied.