OPINION OF THE COURT
Rena K. Uviller, J.
The New York Court of Appeals and the United States Court of Appeals for the Second Circuit are in irreconcilable conflict over the issue presented here: Whether the right to counsel of a defendant indicted for murder is violated by a police-arranged taping of his attempt to bribe a witness, thereby precluding the use of the tape against him in the murder trial as evidence of his consciousness of guilt. (Compare, People v Mealer, 57 NY2d 214 [1982]; Mealer v Jones, 741 F2d 1451 [1984].) This issue arises in the context of a motion by the People to consolidate the prior murder indictment with the consequent one for bribery.
Defendant’s first trial for murder ended in a hung jury. While released on bail pending retrial, defendant approached a witness, Linda R., to induce her to change her testimony at the retrial. Linda reported this to the police, who arranged for her secretly to record subsequent conversations with the defendant. She was instructed not to question or deliberately elicit from defendant information about the murder, but simply to give him *629 an opportunity to reiterate the bribe offer. The taped conversations contain no reference whatsoever to the murder, but only to whether Linda would change her testimony, how she would do so, and possible remuneration. On the basis of her taped conversations with him, defendant was indicted for bribery.
The People now seek to consolidate the murder and bribery indictments, asserting that proof of the bribery is admissible at the murder trial as evidence of defendant’s consciousness of guilt. (CPL 200.20 [2] [b]; [4], [5].) Defendant, opposing consolidation, asserts that the bribery tapes are inadmissible at his murder trial under principles set forth in Massiah v United States (377 US 201). He contends that the taped statements were deliberately elicited by the police while his murder indictment was pending, in violation of his 6th Amendment counsel rights.
The New York Court of Appeals recently rejected this claim in a case with facts indistinguishable from this case. (People v Mealer, 57 NY2d 214, supra.) Thomas Mealer was in jail awaiting trial for murder stemming from a shooting in a bar. Mealer’s wife approached the bartender who had witnessed the shooting to persuade him to speak to her husband and to change his story to the police. When the bartender reported this to the authorities, they arranged for him to visit Mealer in jail; he was cautioned not to question or elicit statements from Mealer about the murder. Like Linda R. in this case, he was only to encourage Mealer to reiterate the subornation offer. During the prison visit Mealer offered the bartender $300 to peijure himself. This conversation was admitted at Mealer’s murder trial, over his objection.
Affirming the conviction, the New York Court of Appeals held that the counsel rights of an indicted suspect are not violated when he is questioned surreptitiously in the course of an undercover investigation of a new crime, “so long as the questioning is legitimately related to the new crime.” (People v Mealer, 57 NY2d 214,217, supra.) Relying on its earlier decision in People v Ferrara (54 NY2d 498, 508), the court reiterated that the right to counsel “may not be used as ‘a shield * * * to immunize one represented by an attorney against investigative techniques that capture a new crime in progress’ ”. (People v Mealer, supra, p 218.)
The New York court has been uniquely solicitous of the right to counsel, and has been expansive in its protection of that right. (See, e.g., People v Rogers, 48 NY2d 167; People v Skinner, 52 NY2d 24; People v Bartolomeo, 53 NY2d 225.) Yet in Mealer (supra), as in earlier cases (People v Middleton, 54 NY2d 474; *630 People v Ferrara, 54 NY2d 498, supra), it recognized that a defendant whose right to counsel has attached with respect to one crime, cannot claim insulation from investigation of new crimes in progress, especially where the investigation is not a pretext for circumventing defendant’s right to be free from questioning about the prior crime. Accordingly, the Court of Appeals ruled that evidence of the new crime, i.e., of Mealer’s effort to suborn a witness, was admissible as evidence of consciousness of guilt in the trial of the previously indicted murder. (People v Mealer, 57 NY2d, at p 218.)
Mealer then sought Federal habeas, which was denied by the District Court in an opinion consistent both with the reasoning of the New York Court of Appeals, and with decisions of Federal appeals courts in other circuits. (Mealer v Jones, 573 F Supp 675 [1983]; see also, United States v DeWolf, 696 F2d 1 [1st Cir 1982]; Grieco v Meachum, 533 F2d 713 [1st Cir 1976], cert denied 429 US 858 [1976]; United States v Moschiano, 695 F2d 236 [7th Cir 1982].) On appeal, however, the Second Circuit expressly rejected the reasoning of the New York Court of Appeals. The Federal appeals court ruled that the admission of the subornation attempt at Mealer’s murder trial did violate his 6th Amendment counsel rights.
The Second Circuit acknowledged that the police were free to continue their investigation of the murder after indictment. But relying upon Massiah v United States (377 US 201, supra), it concluded that if that investigation yields any incriminating statements by the defendant in the absence of his attorney, even if those statements are concerned solely with a new crime, they cannot be used at the trial of the case for which the indictment was pending. The Second Circuit has thus read Massiah broadly indeed, and has fulfilled Justice White’s dissenting prophecy in that case. For Justice White cautioned that the court’s opinion would be given unintended and unanticipated application. (Massiah v United States, 377 US, at pp 208-209, dissenting opn, White, J.)
Viewed most narrowly, Massiah (supra) significantly expanded the right to counsel. Before that landmark case, the right to counsel applied only to court proceedings themselves. (Powell v Alabama, 287 US 45; White v Maryland, 373 US 59; see, Gideon v Wainwright, 372 US 335.) But in Massiah, the court held that once a person is formally accused, his need for the assistance of counsel is critical; that he is entitled to counsel’s aid at extrajudicial encounters with the police, as well as at any formal proceeding. Without counsel’s assistance in such *631 encounters, the court reasoned, the privilege against self-incrimination itself may be vitiated. Accordingly, the Supreme Court held in Massiah that once a defendant has been indicted he may not be questioned, surreptitiously or otherwise, in the absence of counsel, and any statements taken from him about a pending indictment by the police or their agents cannot be used at trial.
In Massiah (supra), however, the defendant’s postindictment admissions elicited by prosecutorial agents related entirely to the facts of the pending indictment, not to any new crime. This feature critically distinguishes Massiah from this case and from Mealer (supra). Here, as noted earlier, when Linda R. acted as an informant, the statements she elicited from defendant related solely to his attempt to bribe her, and not to the murder. Similarly, the bartender in Mealer elicited statements related solely to Mealer’s efforts to get him to lie to the police, and not to the murder itself. Moreover, in Massiah, the informant initiated the conversation with the defendant. By contrast, this defendant and Mealer initiated contacts with private citizens, to wit, Linda and the bartender, respectively, who duly reported to the police.
Rejecting these salient distinctions, the Second Circuit in Mealer (supra) reasoned that the police “must have known that any statements made in the course of suborning perjury would necessarily incriminate Mealer on the murder charge as well”, as evidence of his consciousness of guilt. (Mealer v Jones, 741 F2d 1451, 1455, supra.) Although the Circuit Court conceded that the police were properly conducting an investigation of a new crime, it concluded that defendant’s statements about the new crime could not be used at the trial of the previously indicted crime.
In establishing a rule of per se exclusion, the Second Circuit acknowledged that Massiah (supra) never went that far. It recognized that in Massiah the Supreme Court was not addressing an indicted defendant who was planning or committing a new crime. The Second Circuit concluded, however, that this extension of Massiah was warranted by the single sentence reversal of a conviction in Beatty v United States (389 US 45 [1967], revg 377 F2d 181 [5th Cir 1967]). Beatty, however, is easily distinguishable from Mealer (and from this case).
In Beatty, as in Massiah (supra), the informant elicited from the indicted defendant incriminating statements about the already indicted crime, and did not confine himself to evidence of new crimes. Moreover, in Beatty, the Government’s efforts to interrogate the indicted defendant were not a good-faith effort to *632 capture a new crime in progress. As in Massiah, the Beatty informant made the initial approach to the accused without any advance knowledge that the defendant was embarking on fresh criminal activity. By contrast, the police only sent an informant to this defendant and to Mealer after private citizens informed them that new crimes were aborning. The police did not trick this defendant or Mealer into their attempts to obstruct justice. On the contrary, the defendants aggressively initiated the new criminal conduct themselves.[1]
It is not only because the facts of Massiah (and Beatty v United States, supra) are so distinguishable from Mealer (and this case) that the Second Circuit’s reliance on Massiah is misplaced. The Federal appeals court misreads the spirit and intent of Massiah as well. When the Supreme Court in Massiah held that the right to counsel attaches upon indictment and that a defendant’s uncounseled statements taken after that point could not be used against him, its purpose was twofold: The court sought both to safeguard the privilege against self-incrimination and otherwise to redress the imbalance of power between the State and the accused. But the privilege against self-incrimination surely does not extend to self-inculpation through the commission of new crimes. And a defendant who undertakes a new crime cannot claim the need for protection against the State, nor the advice of counsel at the moment he is bribing a witness or attempting to suborn peijury.
Even under the Second Circuit reading of Massiah (supra), the State is free to indict this defendant for bribery and Mealer for perjury subornation and to use their statements at those trials. But that is no answer to the unwarranted preclusion at their murder trials of their calculated efforts to evade justice. It is not uncommon for those engaged in criminal activity to commit a second crime in order to prevent apprehension for an earlier one. The second crime thus is often highly relevant and probative of the defendant’s guilt of the first. Here, as in Mealer (supra), the second crime is less egregious than the first. But often the reverse is true, e.g., an indicted narcotics trafficker murdering a witness to a drug deal. Unless there is a compelling reason, a jury should not be deprived of the opportunity to hear about the second crime and to assess such relevant and probative evidence.
*633 I am not constrained to follow the dictates of the Second Circuit in Mealer v Jones (supra). New York courts are bound only by the rulings of the New York State Court of Appeals and the United States Supreme Court. (NY Const, art VI, § 3; US Const, art III, § 2; see, United States ex rel. Lawrence v Woods, 432 F2d 1072, cert denied 402 US 983; People v Alston, 94 Misc 2d 89.) Even on questions of Federal constitutional law, State trial courts are not bound by lower Federal courts. (People v Joseph, 85 AD2d 546; People v Rodriguez, 65 AD2d 608.) While I am unpersuaded by the Second Circuit’s logic and reasoning in Mealer, as a practical matter I must be affected by the availability to this defendant of Federal habeas corpus relief.
If defendant were to be convicted of murder after a trial at which the People were permitted use of the bribery tapes, he would unquestionably prevail in a Federal habeas proceeding on the strength of Mealer v Jones (supra).[2] Extensive State resources have already been expended upon one trial of this crime, and more will be expended on retrial. Moreover, defendant, his family, the victim’s family and witnesses will have twice undergone the ordeal of trial, only to face it a third time. It is thus in the interest of all that if a conviction results from the second trial, it be immune from collateral attack. Accordingly, the motion to consolidate is denied; the People are precluded from introducing the bribery tapes at the murder trial.

. Although this defendant was at liberty when Linda R. taped him while Mealer was in prison when the bartender cum informant spoke to him, that distinction is apparently irrelevant to the Second Circuit analysis. Beatty was also at liberty when the police agent spoke to him. Yet the Second Circuit relied on Beatty in concluding that Mealer’s counsel rights had been violated.

. Despite its unequivocal interpretation of Massiah, in Mealer v Jones, the Second Circuit affirmed denial of Mealer’s habeas writ, finding the error harmless in light of the overwhelming additional evidence of guilt. (741 F2d, at p 1455.) In the instant case, however, where the previous trial ended in a hung jury, such error could not be deemed harmless.