■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL EDDINS, Appellant.—Appeal by the defendant from a judgment of the County Court, Westchester County (Rosato, J.), rendered March 18, 1985, convicting him of attempted murder in the second degree, criminal use of a firearm in the first degree and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence. This appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to a law enforcement agent.

Ordered that the judgment is reversed, on the law and the facts, that branch of the defendant's omnibus motion which was to suppress his statements to a law enforcement agent is granted, and a new trial is ordered.

The defendant's conviction arose from a March 31, 1982, incident on the Sprain Brook Parkway during which he purportedly shot Angelo Guerra. It was the People's contention that the defendant had intended to shoot another individual, who had failed to pay a sum of money owed to the

defendant's friend Fioravante (Fred) Marra. At the trial, Marra testified as to his August 17, 1983, conversation with the defendant and the People introduced into evidence part of that recorded conversation, during which the defendant allegedly admitted that he had committed the Sprain Brook Parkway shooting.

On this appeal, the defendant challenges the hearing court's denial of his request to suppress the use of the evidence relating to his recorded statements to Marra made on August 17, 1983.

The testimony at the *Huntley* hearing, in relevant part, indicated that in April 1982 the defendant was arraigned on unrelated charges of possession of a weapon and reckless endangerment. At that time, he indicated to the District Attorney's office and to the State Police that he had information regarding various other unrelated criminal activities, including the shooting incident on the Sprain Brook Parkway. Following unsuccessful negotiations in April 1982 with the prosecutor's office, the defendant's then Legal Aid Society attorney informed the District Attorney's office that in counsel's absence, the defendant was not to be questioned concerning the Sprain Brook Parkway shooting incident. Subsequently, the Legal Aid Society was relieved as counsel for the defendant and a new attorney was assigned to represent the defendant.

On September 24, 1982, the District Attorney's office arranged a meeting with the defendant and several police officers. The defendant's attorney was expected to be in court with him that day but could not be located. Although the defendant stated that he was willing to proceed with the meeting, he said he was not willing to waive his right to have his attorney present at that time. Consequently, the Assistant District Attorney in charge promised that the defendant's statements and any evidence derived from those statements would not be used against the defendant. During the meeting, the defendant, upon being questioned about a murder in White Plains, claimed that Fioravante (Fred) Marra had committed that murder. The only reference to the Sprain Brook Parkway shooting was a question about a newspaper article concerning the shooting, in response to which the defendant said that Marra kept a photocopy in his office.

In June 1983, the police interviewed Marra about the White Plains murder. Marra denied any involvement with the murder, and refused to believe that the defendant had implicated

him, thereby prompting the police to show Marra a portion of the transcript of the September 1982 meeting wherein the defendant had accused Marra of committing the murder. Marra then agreed to cooperate with the police by recording his conversations with the defendant purportedly in order for Marra to clear himself of any involvement in the White Plains murder. Thereafter, Marra, concededly acting as a police agent, had numerous conversations with the defendant, including the aforementioned August 17, 1983, conversation.

Despite the hearing court's finding that on August 17, 1983, the defendant was, in fact, represented by counsel with regard to the Sprain Brook Parkway incident when he made certain statements to Marra, an admitted police agent, the court refused to suppress the August 17, 1983 statements. This was error.

The police were "chargeable with knowledge" that the defendant was represented by counsel with regard to the Sprain Brook Parkway incident *(People v Knapp,* 57 NY2d 161, 173, *rearg denied* 58 NY2d 779, *cert denied* 462 US 1106). Therefore, on August 17, 1983, when Marra, acting as a police agent, asked the defendant questions about this shooting incident, the defendant's State constitutional right to counsel was violated *(see, People v Knapp, supra; People v Skinner,* 52 NY2d 24). Consequently, the August 17, 1983, statements should have been suppressed "notwithstanding that [the] defendant was not in police custody at the time the statements were made" *(People v Knapp, supra,* at 174; *see, People v Skinner, supra).*

As to the specific contentions raised by the People, we note that there is no basis for disturbing the hearing court's specific findings that on August 17, 1983, the defendant had been represented by counsel with respect to the Sprain Brook Parkway incident; and that the defendant had never affirmatively or effectively waived such representation in the presence of counsel at any time. In addition, there was no testimony supporting a finding that the law enforcement officers thought that such representation had been terminated prior to the defendant's August 17, 1983, statements *(see, People v Marrero,* 51 NY2d 56). While the hearing court found that the defendant did not need the "shield" of counsel because he continually contacted the police directly in order to arrange deals to settle the legal charges against him, the "[c]ritical [factor] was that the defendant was represented on the very matter about which he was questioned, a past crime" *(cf., People v Ferrara,* 54 NY2d 498, 508). At no time did the

defendant seek to entrap the law enforcement authorities into violating his right to counsel. He clearly indicated that he had no intention of permitting the use of any incriminating statements he might make outside the presence of his counsel. "By concealing the fact that [Marra] was an agent of the State, the police denied [the defendant] the opportunity to consult with counsel" *(Maine v Moulton,* 474 US 159, 177). It cannot be concluded that had the defendant known that Marra was acting as a police agent, he would have nevertheless discussed the Sprain Brook Parkway incident without making certain that such statements would not be used against him. It is clear that as to any incriminating statements made by the defendant, he intended "to place an advocate between himself and the vast law enforcement resources of the State" *(cf., People v Ferrara, supra,* at 507).

Further, our decision directing suppression does not interfere with legitimate investigative methods of law enforcement personnel *(see, People v Skinner,* 52 NY2d 24, 32, n 3, *supra; cf., People v Ferrara, supra).* "[L]aw enforcement officials must operate within the bounds of our State constitutional guarantees of * * * the right to counsel" *(People v Skinner, supra,* at 32, n 3).

In addition, we find that in light of the Assistant District Attorney's promise that any evidence derived from the defendant's September 1982 statements would not be used against him, the exploitation of those statements to acquire Marra's cooperation would also require suppression of the defendant's August 17, 1983, statements as the fruits of the 1982 statements *(see, Wong Sun v United States,* 371 US 471, 484; *see also, People v Cosby,* 104 AD2d 1000; *People v Urowsky,* 89 AD2d 520).

Contrary to the hearing court's determination, the evidence sought to be introduced by the People concerning the defendant's August 17, 1983, statements was not sufficiently attenuated from the earlier 1982 statements. This case is distinguishable from *United States v Ceccolini* (435 US 268), relied upon by the hearing court. In that case, the witness whose testimony was sought to be suppressed was employed by the defendant in his flower shop. A police officer, while in the shop during a short break from his street assignment, noticed an envelope with money sticking out of it lying on the cash register. The officer opened the envelope and noticed it also contained policy slips. The officer then asked the witness to whom the envelope belonged and she said the defendant. The officer reported this information to the FBI, who interviewed

the witness without referring to the incident involving the police officer. Thereafter, the defendant testified before a Federal Grand Jury that he had never accepted policy slips at his shop. However, the witness voluntarily testified to the contrary and thereafter the defendant was indicted for perjury. At the trial, the witness again voluntarily testified concerning the taking of policy bets at the flower shop. A majority of the Supreme Court held that the witness's testimony was properly admitted at trial for the following reasons: the testimony involved an eyewitness to the circumstances of the crime, the testimony was in no way coerced or even induced by official authority, the identity of the witness and her relationship to the defendant were well known to those investigating the case before the envelope was discovered concededly as the result of an illegal search by the officer, and the search in question was not conducted with the intent of finding any tangible evidence to be used against the defendant nor with the intent to find a willing and knowledgeable witness to testify against the defendant, and that the application of the exclusionary rule in that situation would have no deterrent effect.

In this case, however, while the potential testimony of Marra concerning the defendant's August 27, 1983, statements was not coerced by the police, it was clearly induced by their showing the defendant's earlier September 1982 transcribed statements to Marra, whose identity was only learned through the defendant's earlier statements. Further, Marra would not be testifying to the circumstances of the crime, but to the defendant's purported confession, elicited in violation of his right to counsel. Therefore, it cannot be said that " 'the connection between the lawless conduct of the police and the discovery of the challenged evidence has "become so attenuated as to dissipate the taint" ' " (cf., *United States v Ceccolini,* supra, at 273-274, quoting from *Wong Sun v United States,* 371 US 471, 487, 491, *supra).*

Since the August 17, 1983, statements were central to the People's case, their admission into evidence cannot be deemed harmless error. Accordingly, the conviction must be reversed and there should be a new trial. We do not agree with the defendant's contention that the indictment should be dismissed because the evidence, without the defendant's August 1983 statements, was insufficient to prove his guilt.

Inasmuch as we are ordering a new trial, we have considered the other contentions raised by the defendant. The trial court properly denied the defendant's request to charge as-

sault in the second degree, assault in the third degree, reckless endangerment in the first degree and reckless endangerment in the second degree as lesser included offenses of the attempted murder in the second degree count *(see, People v Glover,* 57 NY2d 61; *People v Ramirez,* 55 NY2d 708; *People v Lord,* 103 AD2d 1032; *People v Davis,* 95 AD2d 837). We find no basis to overrule our earlier decision in *People v Fields* (122 AD2d 159, *lv denied* 68 NY2d 812) wherein we held that the refusal to charge certain offenses as lesser included charges does not constitute a denial of the defendant's constitutional right to due process of law. Further, as to the defendant's challenges to the trial court's ruling on his *Sandoval* motion, we find that it was improper to the extent that the court indicated that it would permit the prosecutor to cross-examine the defendant with respect to certain uncharged crimes involving a planned robbery of a law firm, a planned murder of an airline executive, and the White Plains murder. In light of the numerous other bad acts and convictions upon which the trial court refused to preclude cross-examination of the defendant, the prejudicial effect of cross-examination on these uncharged crimes would far outweigh any probative value with respect to any issue before the jury, including the credibility of the defendant *(see, People v Sandoval,* 34 NY2d 371). We need not address the defendant's claim that cross-examination on these uncharged crimes should have been precluded because the defendant had indicated that he would invoke his Fifth Amendment privilege against self-incrimination if he testified and was questioned on the uncharged crimes. Mangano, J. P., Brown, Lawrence and Harwood, JJ., concur.