■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT CHAMBERS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Sherman, J.), rendered July 26, 1990, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made by him to law enforcement authorities.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. The facts have been considered and are determined to have been established.

Initially, we reject the defendant's contention that the court should have suppressed his statement, made prior to *Miranda* warnings, that he had shot the victim. Statements obtained from a defendant may not be used by the prosecution unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. However, these safeguards are not mandated where a suspect is simply taken into custody, but only where a suspect in custody is subjected to "interrogation" *(see, Rhode Is. v Innis,* 446 US 291, 301;

*Miranda v Arizona,* 384 US 436). Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect" *(Rhode Is. v Innis, supra,* at 301; *People v Ferro,* 63 NY2d 316, 322). Conversely, police statements which are not attempts to elicit an incriminating response from the defendant and which the police could not know are reasonably likely to cause such a response do not constitute an interrogation *(see, People v Huffman,* 61 NY2d 795).

In the instant case, the police did not expressly question the defendant prior to issuing the *Miranda* warnings, but only made a few introductory comments about the investigation. Detective Johnson informed the defendant that he was from New York, that he and the other officers were investigating a homicide, and that the investigation included several other people. There is no evidence in the hearing record that Detective Johnson should have known that his statements were reasonably likely to elicit an incriminating response from the defendant *(see, People v Bryant,* 87 AD2d 873, *affd* 59 NY2d 786). Indeed, the officers were surprised when the defendant made his incriminating statement and they immediately advised him of his constitutional rights.

As the initial statement was properly found to have been volunteered and spontaneously made, there is no merit to the defendant's contention that his later written confession, made after he knowingly, voluntarily, and intelligently waived his constitutional rights, should have been suppressed as part of a continuous chain of events beginning with an inadmissible statement *(cf., People v Bethea,* 67 NY2d 364; *People v Chapple,* 38 NY2d 112).

Nevertheless, we find that the court committed reversible error with respect to its *Sandoval* ruling. The court determined that the defendant could be cross-examined about a 1988 kidnapping conviction and the facts underlying it, as well as, *inter alia,* his narcotics convictions in 1982 and 1989, and a 1978 robbery conviction. The defendant's appeal of the 1988 kidnapping conviction was then pending *(see, People v Chambers,* 184 AD2d 568). Moreover, defense counsel told the court that the defendant would have to invoke his privilege against self-incrimination if asked about the kidnapping and remarked that the court's "rulings quite honestly rule very heavily * * * against my client taking the stand". Since the appeal of the 1988 kidnapping conviction could have

conceivably resulted in a new trial, the defendant had a right to assert the privilege against self-incrimination (see, e.g., *People v Fominas*, 111 AD2d 868; *People v Brensic*, 118 Misc 2d 390, 395). Moreover, the circumstances underlying the prior kidnapping conviction were not relevant to the issues before the court on the instant charges (see, *People v Bennett*, 169 AD2d 369, 373). Thus, by ruling that the defendant's credibility could be assailed through cross-examining him about the unrelated kidnapping conviction which was pending on appeal, the court "unduly compromise[d] the defendant's right to testify with respect to the case on trial, while simultaneously jeopardizing the correspondingly important right not to incriminate [himself] as to the pending matter" *(People v Betts*, 70 NY2d 289, 295; *People v Brower*, 158 AD2d 527). It is also notable that the kidnapping conviction was notorious and received wide-spread news coverage. As such, its potential for prejudice was particularly pronounced and far outweighed any probative value on the question of the defendant's credibility (see, *People v Duell*, 163 AD2d 866; *People v Eddins*, 143 AD2d 355, 360).

Nor can the *Sandoval* error be deemed harmless. The most damaging evidence against the defendant was his statements to the police. At the pretrial hearing, the defendant testified and denied that he ever made the initial incriminatory statement. He also detailed various ways in which he was allegedly threatened and coerced into signing the written confession, which he claimed he never read. It is clear that the court's *Sandoval* ruling precluded the defendant from developing these claims for the jury's consideration at trial. Accordingly, there must be a new trial (see, *People v Williams*, 56 NY2d 236, 241; *People v Hall*, 155 AD2d 344, 346).

In view of our determination, we need not consider the defendant's remaining contention. Lawrence, J. P., Eiber, O'Brien and Copertino, JJ., concur.