OPINION OF THE COURT
Michael R. Juviler, J.
*710 Decision
This is a written version of a decision that was rendered from the Bench after a hearing on a motion to suppress a statement the defendant had made after his arrest. The issue is whether the arresting officer’s displaying a “wanted” poster to the defendant and asking, “This is you, right?” requires suppression of the defendant’s response because no Miranda warnings had been given.
The defendant has been indicted for murder in the second degree and related crimes.
Having observed the witnesses and reviewed the exhibits at the hearing on the motion to suppress, the court makes the following findings of fact and mixed findings of fact and law.
The Facts
On March 31, 1997, Elder Butts, later to become the defendant in this case, was shot in an apartment in Brooklyn. In an ambulance shortly after the shooting he told a detective that he and his friend Blue had had an appointment to rent a hall for a party, but Blue had never shown up, so Butts had gone to the apartment of Blue’s girlfriend, Spunky, on the chance that Blue was there. Spunky let Butts in, appeared nervous, and then locked the door behind him. Three armed men suddenly appeared from rooms in the apartment. One demanded Butts’ money, and when he tried to escape, they shot him. He managed to get away.
As a result of this statement by Butts, Spunky—Carla Williams—was arrested in connection with the shooting.
At the hospital the next day, Butts repeated this story to an Assistant District Attorney, but said that he was not interested in pursuing charges against Williams. She was released.
A month later, on April 30, Carla Williams and her daughter Bethany Williams were shot while shopping in a grocery store. Carla Williams survived, but her daughter perished.
Carla Williams told a detective that the shooter was the man who had been shot in her apartment. A witness to the homicide tentatively identified Elder Butts as the shooter from his photograph in an array. Two days later, on May 2, Carla Williams positively identified Butts as the shooter from the same array.
Butts was not found at his home, in Queens. The officer in charge of the homicide investigation, Detective Anthony Baker, prepared a wanted poster for Elder Butts. At the top was the *711 headline “WANTED FOR HOMICIDE” in large black letters. Right under this headline was an enlarged color mug shot of Butts. These two items formed the top half of the poster.
In June the police received information that Butts was staying at a certain apartment in the Bronx. At 7:30 on the night of June 13, Detective Baker and other detectives went there to arrest the defendant.
A detective knocked on the door, said, “police”, commanded, “Elder, come out”, and banged on the door. Elder Butts answered, “Give me a chance, I’m coming out. Give me time to open the door.” The detective ordered him, “Come out with your hands up.” Butts unlocked the door and began to open it. When it was ajar detectives pushed it in. Detective Baker saw Butts, the defendant, lying on the floor, his hands behind his back, at the threshold of the apartment.
A detective asked, “Are you Elder?” The defendant said, “Yes.”
Detectives handcuffed him and took him to a police car. They sat him in the middle of the back seat, between Detective Baker on his right and another detective on his left. A third detective was in the driver’s seat, a police sergeant in the front passenger seat.
In the car on the way to the precinct, Detective Baker took the wanted poster out of his jacket pocket. The poster had been folded in half twice to fit in the pocket; on one side, only the mug shot of the defendant was visible, and the other side was the top of the poster.
Detective Baker unfolded the poster once, showed the defendant the headline “WANTED FOR HOMICIDE” and the photograph, and asked him, “This is you, right?”
The defendant responded, “I respect you and everything. I’m not going to answer any questions, but I tell you, you guys are good. Did you tap the phone?”
Miranda warnings had not been given.
At the hearing the detective, when asked repeatedly to state his reason for having shown the defendant the top half of the wanted poster, testified that he could not.
The People contended that the defendant’s response was spontaneous, not the product of interrogation and that it would be admissible at trial as evidence of consciousness of guilt, since it was a tacit admission that he had been hiding from the police because he had been aware that he was wanted for homicide.
*712 Discussion
The police may not conduct “interrogation” of a person who is in custody without giving the Miranda warnings. (Miranda v Arizona, 384 US 436, 479.) Interrogation is not limited to questioning in the usual sense. It includes words or actions that are the “functional equivalent” of interrogation. (People v Lanahan, 55 NY2d 711, 713; see also, Rhode Is. v Innis, 446 US 291, 301.)
In Innis (supra), the Court defined this functional equivalency as “words or actions on the part of police * * * that [they] should know are reasonably likely to elicit an incriminating response”. (446 US, at 301.)
In People v Ferro (63 NY2d 316, 319, cert denied 472 US 1007), the Court of Appeals set forth this definition: “What constitutes ‘interrogation’ of a suspect * * * is determined not by the subjective intent of the police, but by whether an objective observer with the same knowledge concerning the suspect as the police had would conclude that the remark or conduct of the police was reasonably likely to elicit a response.”
Presumably, likely to elicit a “response” means “an incriminating response” (see, People v Rodney, 85 NY2d 289, 293; People v Chambers, 184 AD2d 716, 717), or a response relating in some way to the matter for which the suspect has been arrested. Thus, a question to an arrested person about pedigree, such as a request for identification, name, or even employment, does not require Miranda warnings, even though it calls for a response, as it is considered administrative. (People v Rodney, supra: People v Smith, 151 AD2d 792.) If Detective Baker had shown the defendant only the photograph and asked him, “This is you, right?” the court would have considered that a pedigree question confirming the identity of the person in custody.
And if the defendant had initiated the colloquy by asking why he had been arrested, and the detective had been responding, the detective’s words and actions would not have been considered likely to elicit an incriminating response. (See, People v Rivers, 56 NY2d 476, 480.)
But that is not what happened. Without an inquiry by the defendant, the detective deliberately opened the wanted poster to display to him not only the photograph, but the dramatic announcement above it in large black letters, “WANTED FOR HOMICIDE”. He accompanied these actions with a question.
In the context of the display, the detective’s self-generated question was not just about the photograph, but also about be *713 ing wanted for homicide. An objective observer would have concluded that Detective Baker was not merely confirming the defendant’s identity as the person in the photograph, as he easily could have done by showing the defendant the photograph alone. Baker indirectly admitted this at the hearing by stating that he was unable to testify why he had unfolded the poster and shown it to the defendant.
Instead, in the context of the vivid display the officer’s question called for a confirmation of the defendant’s understanding that he was “wanted for homicide”; the defendant was asked, in effect, to acknowledge that he had known that he was being sought by the police for murder. Such an acknowledgment, as the People contended, might be evidence of consciousness of guilt, because an awareness of being wanted would be evidence that he had consciously been hiding out. While an objective observer may well have been surprised at the discursiveness of the defendant’s actual response, such an observer would have expected some comment by the defendant on his status as a fugitive. Such a comment, although oblique, was elicited.
Because, in the totality of the facts, the words and actions of the detective were reasonably likely to elicit an incriminating response, and no Miranda warnings had been given, the defendant’s statement is suppressed.*

 The hearing also related to a motion to suppress identifications as unduly suggestive and a motion to suppress all evidence as the fruits of an arrest at a residence without a warrant. These motions, decided orally, are not treated in this written opinion.