■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY DABNEY, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered March 10, 1978, convicting him of three counts of murder in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. Defendant first contends on appeal that he was denied the assistance of counsel, after counsel had been engaged, when the police tapped the telephone of his former employer, Jerome Walsh, and recorded conversations between the defendant and Walsh. Following a suppression hearing on the question, the court ruled that the redacted tapes were admissible. It determined that Walsh had not acted as an agent of the State and that there was no constitutional violation. We agree. Walsh testified at the hearings (there were two) that he had employed the defendant for some two months as a stock clerk in his hardware store prior to the time defendant was arrested in September, 1976. He was surprised to receive a telephone call from the defendant sometime early in June, 1977. Defendant said he was calling from jail, and they engaged in small talk, which continued during the next four or five calls that defendant made to Walsh. When defendant telephoned the next time, several weeks after the first call, he asked Walsh for advice. Defendant said that, although his attorneys and an investigator had showed him pictures and diagrams that made it impossible for him to have thrown the victim from the roof, he knew he threw her off the roof. When Walsh asked defendant to repeat what he had just said, defendant did so and added that he was no "dummy" and "[he] knew [he] did it." Walsh suggested that defendant speak to his attorneys and ask them what would happen if he sought the mercy of the court. Defendant also said that he had not meant to kill the girl. Walsh

telephoned the police. He told them that defendant had confessed to the murder over the telephone. Walsh agreed to place a recording device on his telephone, and he took one from the store's stock for that purpose. Two police officers spoke to Walsh about the recording device. He was told not to ask any leading questions, merely "to record any conversation which came". An Assistant District Attorney, who contacted Walsh within a day or two, also instructed him not to ask any leading questions or to lead defendant on in any way. Walsh was not asked to elicit anything from the defendant. There is no question that the initial telephone calls placed by the defendant, upon his own initiative, fall under the category of voluntary and spontaneous statements which are admissible even if made in the absence of defendant's attorney *(People v Brooks,* 69 AD2d 884, 886, relying upon *People v Hobson,* 39 NY2d 479, 483). We find nothing in Walsh's agreement to tape the telephone calls which would make him an agent of the State so as to alter the character of the conversations (cf. *People v Cardona,* 41 NY2d 333; *People v Brooks,* 103 Misc 2d 294). Walsh went to the police of his own volition. He was made no promises or given any inducements. Contrary to any active role designed for him by the police, the police instructed him (as did the Assistant District Attorney) *not* to ask defendant leading questions. Walsh never placed a call to the defendant. Under those circumstances, we believe the calls retained their legal status of "spontaneous and voluntary" as described in *People v Hobson (supra).* We find no merit in the other contentions raised. Titone, J. P., Mangano, Rabin and Martuscello, JJ., concur.