OPINION OF THE COURT
Simons, J.
Defendant has been convicted of various charges involving violation of the tax and liquor laws, bribing a witness and conspiracy to obstruct governmental administration, and sentenced as a second felony offender to multiple concurrent terms of imprisonment having a maximum of four and a *157 minimum of two years.[1] On appeal, a divided Appellate Division, modified the judgment by vacating the sentence as a second offender and otherwise affirmed. Justice Sullivan, who dissented and voted to affirm, granted both parties leave to appeal.
Defendant’s principal challenge is to the validity of the bribery convictions. He contends that evidence of the briberies, established by a tape-recorded telephone conversation with a police informant, was obtained in violation of his right to counsel under the State and Federal Constitutions because at the time the conversation occurred defendant had retained an attorney to represent him on the tax violations then under investigation. He claims further that he could not be guilty of bribing a witness because at the time he made his telephone call he did not know that the informant had been subpoenaed to testify before the Grand Jury or that he might be subpoenaed in the future. Finally, defendant maintains that he cannot be sentenced as a second felony offender because he was originally sentenced on the predicate felony more than 10 years before commission of the present felonies (see, Penal Law § 70.06 [1] [b] [iv]). The Appellate Division, accepting this argument, held that the date of a predicate felony for enhanced sentencing purposes is the date of the original sentence notwithstanding that the original conviction was subsequently vacated as the result of a successful appeal and defendant resentenced after further proceedings. Defendant also raises several other points before this court which require no discussion. We find no merit to defendant’s contentions and therefore modify the order of the Appellate Division, reinstate the second offender sentence and remit the matter to the Appellate Division for consideration of the factual issues as to sentence.
I
Defendant Richard Bell and his codefendants John Dobson and Vincenzio Caravello owned and operated two Manhattan *158 night clubs, The Mine Shaft Club and The Hell Fire Social Club. The Attorney-General, at the request of the Commissioner of Taxation and Finance, had commenced an investigation into allegations that The Mine Shaft had failed to pay taxes (see, Executive Law §63 [3]). On November 7, 1985, defendant warned Walter Wallace, a former manager of The Mine Shaft, that there might be a subpoena out for him and told him to stay around the house. The next day Wallace attended a meeting with defendant, Caravello and Dobson at which defendant told Wallace to go on "vacation” and to avoid "subpoena people” and reporters working on the investigation but to "keep in touch” while out of town. Wallace was assured he would be given money for expenses and $2,000 was subsequently delivered to him for that purpose. Wallace went to stay with friends in Westchester. The next day, after seeing his picture on the front page of the New York Post, Wallace spoke with defendant and Caravello and defendant told him, in a manner Wallace perceived as threatening, that he should leave that night for Hawaii with Caravello.
As a result, Wallace decided to get counsel and speak to the authorities. He and his attorney met with members of the Attorney-General’s staff on November 13, discussed his involvement with The Mine Shaft and the instructions he had received from defendant and the other partners, and offered to assist in the investigation. On November 19, 1985, the Attorney-General’s staff decided to accept Wallace’s assistance and to attempt to tape-record his telephone conversations with The Mine Shaft partners. The same day, the Grand Jury issued a subpoena duces tecum to defendant requesting documents pertaining to the operation of The Mine Shaft. Defendant then retained an attorney who notified the Assistant Attorney-General of his representation on the morning of the 20th.
Later on the 20th, an investigator from the Attorney-General’s office met with Wallace in Ohio, where he had gone after his meeting with the Attorney-General’s staff. The investigator had Wallace sign a cooperation agreement, served him with a Grand Jury subpoena and interviewed him concerning The Mine Shaft operations. At that time, Wallace agreed to allow the investigators to monitor and tape his future telephone calls. During the next two days he called Caravello twice, as he had been instructed to do by defendant, and, in response to Caravello’s request, he gave Caravello a number where defendant could reach him.
*159 At approximately 1:00 p.m. on November 21 defendant telephoned Wallace and bribed him. The call was monitored and recorded by the police and is the subject of this appeal. In that conversation defendant told Wallace that he hoped The Mine Shaft information did not "have to come out for a long time”, to "stay away” and that money would be sent to him. He also told Wallace what to say if he were questioned by authorities about its operation. For the most part, the conversation was sustained by defendant’s instructions to Wallace to stay in Ohio, to avoid investigators and, if he was interviewed, to make sure his story was consistent with defendant’s story. During the conversation Wallace told defendant, falsely, that he had learned a subpoena had been left at his New York apartment. Defendant responded, "Right. What there [sic] really doing they subpoenaed everybody * * * its [sic] just not you.”
As a result of this conversation, defendant was charged with two counts of bribery in violation of section 215.00 of the Penal Law. The first count charged an offense under subdivision (a), attempting to influence Wallace’s testimony, and the second, an offense under subdivision (b), seeking to influence Wallace to avoid testifying.
Based on the testimony of Wallace, other employees and the police officers involved in the investigation defendant was also charged with several tax and liquor law violations and conspiracy to obstruct governmental administration. The Supreme Court, New York County, granted defendant’s motion for a Huntley hearing addressed to the tape-recorded telephone conversation with Wallace and, after the hearing, denied his motion for suppression. Defendant then waived a jury and agreed to a trial by the court based on the Grand Jury minutes and the minutes of the suppression hearing. On the basis of that evidence the trial court convicted defendant and sentenced him as a second felony offender.
II
Defendant seeks a dismissal of the entire indictment, contending that his recorded conversation with Wallace, a prosecutorial agent, should be suppressed and that in its absence the other counts fail for lack of sufficient corroboration. Noting that the conversation with Wallace took place after the Attorney-General knew he was represented, he claims that his State and Federal constitutional rights to counsel were vio *160 lated. He relies principally on the broader State rule as developed in People v Skinner (52 NY2d 24).
When a defendant in custody is represented on a pending charge, he may not, without his attorney present, be questioned about that charge (People v Hobson, 39 NY2d 479), or about unrelated criminality if the police know of his representation (People v Rogers, 48 NY2d 167) or know of another pending charge on which defendant is represented (People v Smith, 54 NY2d 954; People v Bartolomeo, 53 NY2d 225). In Skinner, we took a further step and prohibited noncustodial interrogation about a matter under investigation if counsel had been retained specifically on the matter and had instructed the police not to question the defendant in his absence. Our ruling was designed to prevent the police from rendering the right to counsel ineffective by questioning the defendant about matters relating to the subject of the representation in the absence of counsel retained on the matter (id., at 32; People v Hauswirth, 89 AD2d 357, 359, affd 60 NY2d 904). The holding also granted the same protection to criminal defendants, as a matter of State constitutional law, as that granted a civil litigant who enjoys the benefit of "the ethical responsibility of attorneys in civil matters not to communicate on the subject of the representation with an individual known to be represented by an attorney on the matter” (People v Skinner, supra, at 29).
In the present case defendant had been served with a Grand Jury subpoena duces tecum in connection with the tax investigation calling for him to produce records in his possession. His right to counsel attached on that matter on November 20, 1985 when his lawyer contacted the Attorney-General (see, People v Rogers, 48 NY2d 167, supra). Moreover, Wallace was clearly acting as an agent of the police when he allowed the police to monitor and tape his conversation because he had agreed to cooperate with them for the purpose of obtaining evidence against defendant. Defendant contends that under these circumstances the protection afforded by the Skinner rule should be extended to prohibit his noncustodial questioning about an unrelated crime under investigation.
We addressed the question in People v Ferrara (54 NY2d 498). In that case, defendant retained counsel in connection with his appearances before the Grand Jury investigating fraud in the nursing home industry. The prosecutor, suspecting perjury, arranged to record defendant’s subsequent conver *161 sations with a nursing home operator during which defendant offered cash kickbacks. Defendant was again called before the Grand Jury and denied any knowledge of the kickbacks. On the basis of that denial, he was indicted for perjury and the taped conversation was offered to establish his guilt. He claimed that the tape should have been suppressed because the prosecutor violated his right to counsel by arranging to record the conversation. We held that neither the Federal nor State constitutional guarantee of the right to counsel includes the right to have counsel present when a criminal enterprise is being planned or executed, noting that the critical fact requiring suppression in Skinner "was that the defendant was represented on the very matter about which he was questioned, a past crime” (People v Ferrara, supra, at 508).
People v Middleton (54 NY2d 474, 480) set forth some factors to be considered in deciding when a conversation between a person accused and a police officer is proscribed by the constitutional right to counsel. They included consideration of who initiated the conversation, whether the bribe offer furnished a valid independent basis for investigation, the risk that defendant took in offering the bribe with respect to the possible recording of it, and whether, in view of the credibility problems in such cases, it is usual practice to attempt to record a conversation.
A consideration of the Middleton factors in this case establishes that the People did not violate defendant’s right to counsel by recording his conversation with Wallace. It is particularly relevant that although Wallace initiated the calls, he did so on instructions from defendant and, indeed, the taped phone call in question was placed by defendant to instruct Wallace on how to testify or, preferably, avoid testifying. Wallace said very little. It is also significant that defendant had previously instructed Wallace to go on "vacation” and avoid subpoenas, and promised him that he would be "taken care of’ if he did. These facts provided evidence of a possible new crime and support the conclusion that the Attorney-General had a valid independent basis for arranging to tape the conversations and that he was not attempting to obtain incriminating evidence of defendant’s prior offenses in violation of his right to counsel (see, People v Ferrara, supra, at 508).
Furthermore, the conversations were limited in scope and sought only to determine whether defendant was in the pro *162 cess of committing a "new crime”. The investigators instructed Wallace that they were only interested in obtaining more information about how he would be "taken care of’ and in confirming that defendant was involved in a possible bribe, not in obtaining additional evidence on the underlying tax offenses. Accordingly, the conversation related almost exclusively to defendant’s plan to influence Wallace’s testimony or avoid his testifying altogether, and Wallace did not question defendant about the crime for which he had obtained representation (see, People v Ferrara, supra, at 505). Thus, defendant’s reliance on People v Sanders (56 NY2d 51) is unavailing because there, the conversations recorded by the police were offered to prove defendant was involved in the very crime for which he had retained counsel.
Finally, it is worth remembering the basis for our rules on right to counsel. We established a broad right under our State Constitution because, as explained in People v Rogers (48 NY2d 167, 173, supra), "the attorney’s presence serves to equalize the positions of the accused and sovereign, mitigating the coercive influence of the State and rendering it less overwhelming.” There is no sound reason for extending that right to protect a defendant against incriminating himself in a new unrelated crime, however. Where the questioning is in a noncustodial setting, the State does not exert an "overwhelming” or "coercive influence” on the individual nor are the purposes underlying the Skinner rule implicated when the investigation involves a new crime. The People did not, by taping the conversation between defendant and Wallace, interfere with defendant’s representation concerning the Grand Jury investigation nor did they breach the ethical proscription against direct communication with persons represented by counsel on the subject of the representation.
Defendant also claims that his right to counsel under the Federal Constitution has been violated requiring suppression of the conversation (see, Maine v Moulton, 474 US 159). The crimes involving defendant were still in their investigatory stages, however, and no formal charges had been filed at the time the conversation took place. Therefore, defendant’s right to counsel had not attached under the Federal Constitution (see, Kirby v Illinois, 406 US 682).
ra
Defendant next contends that he cannot be guilty of bribing *163 a witness under section 215.00 of the Penal Law because he lacked the necessary mens rea to commit the crime. He argues first that even if it be assumed that Wallace had been properly subpoenaed at the time of the November 21 telephone conversation, he did not know of his witness status or of the facts that arguably transformed Wallace into "a person about to be called as a witness”. He claims further that the facts as he perceived them should control in determining his guilt under the statute, i.e., that while Wallace was in Ohio, a subpoena had been left at his New York apartment. Because he believed Wallace was not properly served, defendant contends that he could not be guilty of bribing a witness because under his subjective perception, Wallace was not a witness within the intendment of the statute. Implicit in this is the contention that the statute is not violated unless the bribe is made after the witness is under subpoena to the knowledge of defendant. Manifestly, Wallace was "a witness or a person about to be called as a witness” at the time of the crime under any reasonable interpretation of the statute. The trial court made only a general finding that defendant knew Wallace was about to become a witness, however, and therefore defendant’s contention makes it necessary to construe the language of the statute to determine if this finding was supported by the evidence.
Penal Law § 215.00 states that: "[a] person is guilty of bribing a witness when he confers * * * any benefit upon a witness or a person about to be called as a witness in any action or proceeding upon an agreement * * * that (a) the testimony of such witness will thereby be influenced, or (b) such witness will absent himself from * * * such action or proceeding.” (Emphasis added.)
The section is a part of article 215 of the Penal Law and is one of a number of provisions enacted to guard against corrupt interference with the judicial system by those seeking to improperly influence witnesses’ testimony or induce them to avoid testifying.[2] The section does not define who is "a witness or a person about to be called as a witness” or impose a requirement that the witness actually be under subpoena *164 before the conduct is considered criminal and we are left to do so.
In the dictionary sense, a witness is a person who "personally sees or perceives a thing” (Black’s Law Dictionary 1438 [5th ed 1979]) or "one who has knowledge of a fact or occurrence sufficient to testify with respect to it.” (97 CJS, Witnesses, § 1.) The CPL, incorporating the uniform act for securing out-of-State witnesses, defines a witness as "a person whose testimony is desired in any proceeding or investigation by a grand jury or in a criminal action, prosecution or proceeding” (CPL 640.10 [1]). Finally, the California courts, in construing identical language contained in their statute, i.e., "a witness or a person about to be called as a witness”, have held that the crime may be committed before the witness is subpoenaed (see, People v Martin, 114 Cal App 392, 300 P 130; People v McAllister, 99 Cal App 37, 277 P 1082; see also, Annotation, Influencing or Tampering with Witness, 8 ALR4th 769).
The conclusion to be drawn from these definitions is that an individual’s status as a witness depends upon the evidence he can supply the court, not the immediacy of the need for the evidence. The necessity for such evidence does not depend upon the stage of the investigation or whether a subpoena has been issued. An investigation is frustrated equally whether a bribe is offered one day before a subpoena issues or one day after. If the evidence is sufficient to support a finding that defendant reasonably should have believed that the person would be a witness and that he intentionally attempted to influence the witness’s testimony or induce the witness to avoid testifying, the crime is complete. This view is consistent with the statute’s underlying purpose, to guard against subversion of judicial proceedings by suppressing needed evidence. Moreover, acceptance of defendant’s interpretation of the statute would only encourage efforts to influence potential witnesses before the investigation had fully developed and subpoenas issued.
When the bribery occurred on November 21, Wallace was "a witness or a person about to be called as a witness”. He had signed a cooperation agreement with the Attorney-General and agreed to allow taping of his telephone calls. In addition, he had been served with a subpoena directing his appearance before the Grand Jury in the matter. Irrespective of those circumstances, however, defendant was chargeable *165 with knowledge that Wallace was "a witness or a person about to be called as a witness” because Wallace was the manager of The Mine Shaft and possessed knowledge crucial to any investigation of the club’s tax liability. Defendant and his partners recognized this by urging him to leave the jurisdiction and giving him money to do so. Defendant also revealed his knowledge of Wallace’s status during the November 21 conversation when he stated that the authorities had "subpoenaed everybody * * * its [sic] just not you.” Based upon this evidence, the trial court’s finding that defendant possessed sufficient knowledge of Wallace’s status as a witness was amply supported. This finding of knowledge, undisturbed by the Appellate Division, binds this court and is legally sufficient to support the finding of guilt.
IV
The People’s cross appeal questions the Appellate Division’s vacatur of defendant’s second felony offender sentence. The Appellate Division found the predicate crime could not be used to enhance defendant’s punishment because his original sentence was imposed "more than ten years before commission of the felony of which the defendant presently stands convicted” (Penal Law § 70.06 [1] [b] [iv]).
Defendant was first sentenced on the predicate felony in November of 1973 but his conviction was reversed and a new trial directed because of a prejudicial jury charge. His second conviction, after a new trial, was also reversed. He subsequently pleaded guilty to the crime of burglary in the third degree and was sentenced on June 9, 1980. The majority at the Appellate Division determined that the "sentence” referred to in the statute was the first sentence, notwithstanding the reversal of the conviction and vacatur of the sentence after defendant’s successful appeal, and that it could not be used to enhance defendant’s punishment because it was more than 10 years old. We agree with Justice Sullivan, for the reasons stated in his dissenting opinion (see, 138 AD2d 298, 299-300) that the "sentence” is the sentence imposed as a part of the final judgment on June 9,1980.
Before concluding, certain matters in the dissent must be addressed.
First, it is necessary to correct some factual inaccuracies.
The dissent, noting the earlier efforts to influence Wallace to leave the jurisdiction, assumes that the bribery was a *166 continuing crime extending from November 8 to November 21. It then contends that the bribery was a crime under investigation and a crime for which defendant had sought the assistance of counsel. Evidence of the earlier contacts between defendant and Wallace were important for they gave the police a valid independent basis for investigating possible bribery but the fact remains that defendant was not charged with continuing crimes occurring over a two-week span from November 8 to November 21 but with two counts of bribery, both occurring on November 21, 1985, and both established by the tape-recording of his telephone conversation with Wallace on that date. Moreover, the tape did not contain "admissions” of a previous crime committed by defendant, as the dissent would have it, it recorded the crimes themselves. Thus, notwithstanding the comments of Saslaw quoted in the dissent, defendant was not prosecuted for a "continuing crime” or a "crime in progress” at the time he hired counsel and the trial court did not find he had been.
Continuing its argument of a crime in progress, the dissent would hold that inasmuch as the police knew of defendant’s earlier misconduct, they were required to halt their investigation, rather than go forward with it, because the misconduct was encompassed within the broad scope of defendant’s right to counsel. The Attorney-General instituted this investigation at the request of the Commissioner of Taxation and Finance to inquire solely into allegations of tax irregularities and defendant obtained counsel to assist him after a subpoena had been issued on November 19 seeking his records dealing with that investigation. Whether defendant’s conduct on November 8 constituted bribery or not, defendant was not charged as a result of it, it did not make up any part of the offenses contained in the indictment and he had not retained counsel in connection with it.
Finally, it should be understood that the call which contained the bribes was placed by defendant and resulted from instructions defendant gave Wallace to "keep in touch”, not from instructions the police or the Attorney-General gave him to call defendant.
Second, it is necessary to consider some matters of law, specifically, what this court held in People v Skinner (52 NY2d 24, supra). Our precise ruling was that an individual who is represented on a matter under investigation may not be interrogated on that matter, even in a noncustodial setting, in *167 the absence of counsel. We did not, as the dissent implies, extend the right of counsel beyond the specific matter for which counsel was retained and not a single decision of this or any other court which does so hold is cited to support that contention.
As to the correct interpretation of People v Sanders (56 NY2d 51, supra), the dissent finds it necessary, because it views defendant’s conduct as one continuing crime, to construe our holding in that case as resting on a finding that the crime was completed. Whether the crime was completed or not, however, was irrelevant to the decision in Sanders. The evidence was suppressed there because it related to a crime on which defendant was represented.
Finally, the dissent is concerned that the majority has taken an "errant footstep” and diluted the broad right to counsel previously recognized by this court. On the contrary, our decision follows a well-defined path established by earlier precedents and is consistent with the policy considerations underlying them (see, e.g., People v Ferrara, supra; People v Middleton, supra; People v Mealer, 57 NY2d 214, 218; see also, Maine v Moulton, 474 US 159, 180, supra; People v Bongarzone, 69 NY2d 892). The rule asserted by the dissent, on the other hand, would extend People v Rogers (48 NY2d 167, supra) to noncustodial interrogation and hold that once an individual retains counsel he or she may not be dealt with directly on any matter in an absence of counsel. Under this reasoning, the police must suspend normal investigative techniques and give a defendant a preferred position facilitating his commission, planning or solicitation of a new crime, merely because he has counsel during the investigation of his earlier criminality (see, People v Ferrara, supra, at 508). The right to counsel does not extend that far, nor should it.
Accordingly, the order of the Appellate Division should be modified in accordance with this opinion and, as modified, is affirmed.

. Specifically, defendant was convicted of two counts of bribing a witness, 15 counts of failure to file New York State sales tax returns in violation of Tax Law § 1145 former (b), four counts of failure to file New York City General Corporation Tax returns in violation of Administrative Code of the City of New York § R46-5.0, two counts of serving liquor without a license in violation of Alcoholic Beverage Control Law § 130 (3), and one count of conspiracy to obstruct governmental administration.

. Formerly the statute did not encompass acts intended to influence a witness to leave the jurisdiction (see, People v Maynard, 151 App Div 790, 794). The present formulation was enacted to cover such conduct (see, Staff Notes of Temporary State Commission on Revision of Penal Law and Criminal Code, Proposed New York Penal Law, 1964 McKinney’s Spec Pamph, at 377).