# United States Court of Appeals
## For the First Circuit

_____

No. 99-2190

UNITED STATES OF AMERICA,

Appellant,

v.

JEREMY BENDER,

Defendant, Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

_____

Before

Stahl and Lynch, Circuit Judges,
and Gorton, District Judge.*

_____

F. Mark Terison, Senior Litigation Counsel, with whom Jay P. McCloskey, United States Attorney, was on brief, for appellant.
Jane Elizabeth Lee for appellee.

_____

_____

* Of the District of Massachusetts, sitting by designation.

August 4, 2000
_____

**LYNCH, Circuit Judge**. While in prison awaiting trial on charges of being a felon-in-possession of a firearm, Jeremy Bender conversed with an undercover government agent concerning his plot to falsify an alibi and possibly kidnap and murder government witnesses. Bender's attorney was not present during the conversation nor notified that it would take place. After the government informed Bender that it would seek to introduce his statements in the pending criminal case, he moved to have them suppressed. Applying Maine v. Moulton, 474 U.S. 159 (1985), the district court found that the statements were incriminating and obtained in violation of the Sixth Amendment. As a consequence, the court suppressed them. The government appeals and argues that the admission of these statements would not violate the Sixth Amendment because: 1) the statements concerned future crimes unrelated to the pending charges; 2) the statements, insofar as they concerned subornation of perjury, were unprotected by the Sixth Amendment; 3) the government did nothing wrong in obtaining the statements; and 4) suppression of the statements would encourage the obstruction of justice. We affirm.

## I.

On April 14, 1999, Bender was indicted on one count of being a felon-in-possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1).[1] Bender was arraigned on April 26th and the district court assigned him counsel. He was incarcerated pending trial. A superseding indictment, entered May 27, 1999, tacked on two

---

[1]     Related state charges against Bender are also pending.

more felon-in-possession counts.  For reasons immaterial to this appeal, Bender's trial date was continued until October 18, 1999.

During his incarceration, Bender allegedly spoke with two fellow inmates, on separate occasions, about ways in which he could illegally influence the outcome of his impending trial.  One scheme involved the fabrication of an alibi for himself; the second involved the kidnaping and murder of government witnesses who would testify against him.  The inmates, neither of whom were government agents at the time, reported their conversations with Bender to the authorities.

On September 23, 1999, an undercover officer went to the prison to meet with Bender.  The officer was instructed not to speak with him about the pending felon-in-possession charges.  Bender thought he was meeting with his alibi-for-hire.  During the ensuing conversation, Bender made incriminating statements pertaining to his schemes to hire an alibi witness and a hit man. There was no discussion of, and Bender made no admissions pertaining to, the pending felon-in-possession charges as such.  Bender's attorney was not present during the conversation.

On October 1, 1999, the government notified Bender's attorney that it would seek to introduce Bender's statements as evidence against him in the pending case.  That same day, Bender moved to suppress all statements made to the two prisoners and the undercover officer.  On October 22nd, the district court heard testimony and argument and,

relying on Moulton, granted Bender's motion to suppress the statements made to the undercover officer.[2] In particular, the district court found that:

> the law enforcement agents intended to investigate new crimes, specifically subornation of perjury and kidnaping or attempted murder . . . [;]
>
> . . . the law enforcement agents did exactly what they should have done, which is to say . . . limiting the inquiry from defendant Bender and, of course, . . . [investigating] these potential new offenses . . . [;]
>
> . . . because the subordination of perjury had to do with an alibi . . . [,] the law enforcement authorities must have known it was likely to elicit incriminating statements . . . [;]
>
> . . . [and] the defendant did in fact make incriminating statements with respect to the creation of false alibi and, of course, the government would not seek to admit it were it not material evidence that would bear upon consciousness of guilt involving the crime.

The government appeals.

## II.

We review the district court's factual findings for clear error and its constitutional rulings de novo. See United States v. Marenghi, 109 F.3d 28, 31 (1st Cir. 1997). The government does not dispute the district court's factual findings.

A person is "denied the basic protections of [the Sixth

---

[2]     The district court denied Bender's motion insofar as it pertained to the statements of the two prisoners regarding their conversations with Bender before they contacted the government. Bender does not appeal this aspect of the district court's ruling.

-5-

Amendment's] guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." Massiah v. United States, 377 U.S. 201, 206 (1964); see also United States v. LaBare, 191 F.3d 60, 64 (1st Cir. 1999). As Justice Black noted in Gideon v. Wainwright, "reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court . . . cannot be assured a fair trial unless counsel is provided for him." Gideon v. Wainwright, 372 U.S. 335, 344 (1963); see also United States v. Nocella, 849 F.2d 33, 35 (1st Cir. 1988). And, as noted in Moulton, "what use is a defendant's right to effective counsel at every stage of a criminal case if, while he is held awaiting trial, he can be questioned in the absence of counsel until he confesses?" Moulton, 474 U.S. at 171 (internal quotation marks and citation omitted).

Thus, the accused is guaranteed, "at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State." Id. at 176. It is irrelevant who initiates the conversation that is likely to induce the accused to make incriminating statements without the assistance of counsel. See id. at 174-75; United States v. Henry, 447 U.S. 264, 270-75 (1980). Although "the Sixth Amendment is not violated whenever -- by luck or happenstance -- the State obtains incriminating statements from the

-6-

accused after the right to counsel has attached," the "knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." Moulton, 474 U.S. at 176; see also Bey v. Morton, 124 F.3d 524, 528-30 (3d Cir. 1997). Further, "that the State 'must have known' that its agent was likely to obtain incriminating statements from the accused in the absence of counsel suffices to establish a Sixth Amendment violation." Moulton, 474 U.S. at 176 n.12. The government, here, does not ask us to rethink the rule in Moulton, nor does it argue that the incriminating statements were obtained by luck or happenstance.

Instead, the government contends, primarily, that, since the incriminating statements concerned different and future crimes, unrelated, it says, to the pending charges, the Sixth Amendment does not apply. We disagree. The statements were incriminating not only as to future crimes (perjury, conspiracy to kidnap and murder) but also as to the pending charges. So long as the statements were incriminating as to the pending charges and were deliberately elicited by government agents, they cannot constitutionally be admitted in the trial of those charges. Cf. id. at 180 (holding that the Sixth Amendment does not permit the introduction of directly incriminating statements obtained during the investigation of other crimes).

At bottom, the government's position is that Moulton is limited to direct statements by the defendant about the crime with which he has been charged. Nothing in Moulton supports that limitation, and Sixth Amendment jurisprudence is to the contrary. See Massiah, 377 U.S. at 207. All that matters is that the statements were incriminating as to the pending charges; it does not matter how. So while Bender's statements suborning perjury did not provide direct evidence in the pending case (e.g., underlying facts, details, and strategy) or amount to an explicit confession, they "strongly tended to show that a guilty mind was at work." United States v. Lozada-Rivera, 177 F.3d 98, 107 (1st Cir. 1999) (suppressing similar jailhouse statements because of Sixth Amendment violation). It was obvious that questioning Bender about a false alibi for the underlying charges would result in his making incriminating statements as to those charges. The same was true of a plot to do away with government witnesses. Bender's statements, therefore, were likely to be incriminating as to the pending charges, were deliberately elicited post-indictment, and were obtained in the absence of counsel. Thus, they were obtained in violation of the Sixth Amendment and were rightly suppressed by the district court.[3] Cf. id. (finding that the admission of statements

---

[3] Moulton overruled this circuit's earlier decisions in Grieco v. Meachum, 533 F.2d 713, 717-18 (1st Cir. 1976), and United States v. DeWolf, 696 F.2d 1, 3 (1st Cir. 1982). See generally Carpenters Local Union No. 26 v. United States Fidelity & Guar. Co., 215 F.3d 136, 138 & n.1 (1st Cir. 2000). We disagree with the district court's ruling in

-8-

concerning subornation of perjury was not harmless error and required reversal and a new trial).  Our conclusion is in accord with the Second Circuit's pre-Moulton decision in Mealer v. Jones, 741 F.2d 1451, 1453-55 (2d Cir. 1984).

The government also contends that statements pertaining to subornation of perjury are unprotected by the Sixth Amendment.  Citing Nix v. Whiteside, 475 U.S. 157, 158 (1986), the government argues, in particular, that, since Bender's trial attorney would have had to report his client's subornation of perjury had he known of it, Bender's statements are not covered by the Sixth Amendment's right to counsel. The argument confuses two different concepts: the doctrine of right to counsel under the Sixth Amendment and the doctrine of attorney-client privilege (and exceptions to that doctrine for crime or fraud).  These are two distinct doctrines serving different purposes.  The right to counsel is not defeated if a particular communication is not privileged.  Many activities of counsel are not privileged, as in examining witnesses at trial; others are privileged, as in giving confidential advice.  The logic of the government's argument is that because an activity is not privileged, there is no right to counsel. To articulate that logic is to show its weakness.  The right to counsel applies in both privileged and non-privileged situations.  This is so

Burke v. Vose, 847 F. Supp. 256, 261-64 (D.R.I. 1993), on which the government relies.

-9-

regardless of whether a communication falls within the exception to a privilege. Indeed, the privilege doctrine, and so the exceptions to it, assume there is an attorney-client relationship. Whiteside, an ineffective assistance of counsel case, also plainly does not apply. The Sixth Amendment prohibits the government from eliciting incriminating statements no matter their content. That defense counsel might be under an obligation not to participate in a client's subornation of perjury does not excuse the government from its obligation to interact with the accused through the medium of counsel. Indeed, the government's argument can be stood on its head: given counsel's ethical obligation to advise a client not to commit perjury, the client's Sixth Amendment right to counsel is particularly important in situations like the one this case presents.

The government argues, as well, that suppression is illogical because the district court found that the government did nothing wrong. The same argument was presented and rejected in both Massiah and Moulton. See Massiah, 377 U.S. at 207; Moulton, 474 U.S. at 179. Though the government might be investigating entirely separate crimes, "dual purposes may exist whenever police have more than one reason to investigate someone." Moulton, 474 U.S. at 179 n.15. That the government might have other legitimate reasons for confronting a person who is accused does not eliminate the violation of the right as it pertains to the pending charges. See id. at 179-80; see also id. at

180 ("To allow the admission of evidence obtained from the accused in violation of his Sixth Amendment rights whenever the police assert an alternative, legitimate reason for their surveillance invites abuse by law enforcement personnel in the form of fabricated investigations and risks the evisceration of the Sixth Amendment right recognized in Massiah.").

As a variant of this same argument, the government contends that the purpose of suppression is to deter law enforcement officers from violating constitutional rights by imposing the penalty of suppression when they do. If the incriminating statements violate constitutional rights only when the statements are sought in order to be introduced as to pending charges, then the agents here violated no constitutional rights in procuring the statements, and so there is no rationale for suppression.[4] There are at least two different responses. First, even if the focus were on the agent and not the government as

_____

[4]    The government says that if it is "free to use the statements at a future prosecution, there must be no Sixth Amendment violation in the very acquisition of the statements." Thus, "there should be no Sixth Amendment violation in obtaining and using the statements at a trial on pending charges." We have no occasion to rule on the premise; the conclusion, however, does not follow. The Sixth Amendment does not fasten itself irremovably from an incriminating statement, making that statement either admissible or inadmissible for all time. Instead, the Amendment, in this context, governs the interactions between the government and the accused once the adversarial process has begun in a particular case. In other words, "[t]he Sixth Amendment right . . . is offense specific." McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). Consequently, the same statements can be given differing constitutional status depending on their relationship to a particular case.

prosecutor, we do not live in a perfectly logical world but rather live in one that is built on experience and accommodation of differing interests. The tension the government identifies is inherent in what Moulton calls "a sensible solution to a difficult problem." Id. at 179. Second, as one commentary has noted, "[i]n answer to such criticisms, it might be observed that Massiah, after all, is grounded in the Sixth Amendment right to counsel and thus should be assessed in terms of its protection of that right instead of as some sort of alternative to or extension of either Miranda or the voluntariness test." 2 Wayne R. LaFave et al., Criminal Procedure 504 (2d ed. 1999).

Finally, the government argues that suppression is poor policy because it "encourages defendants to suborn perjury, tamper with witnesses, obstruct justice, and otherwise interfere with the truth-finding function of the courts." As observed, the presence of counsel may lessen instances of such conduct. And we doubt that defendants will be more likely to suborn perjury or obstruct justice because of our decision. Nothing prevents the government from prosecuting Bender in a separate proceeding for subornation of perjury and the like. See Moulton, 474 U.S. at 180 n.16; United States v. Walker, 148 F.3d 518, 528-30 (5th Cir. 1998). Nothing prevents the government from using Bender's statements, if knowing and voluntary, for the purpose of impeachment, if he testifies. See Michigan v. Harvey, 494 U.S. 344, 351 (1990). And nothing prevents the government from using these

-12-

statements at sentencing if Bender is tried and convicted.  <u>See</u>
U.S.S.G. § 3C1.1.  The government might be reluctant to prosecute
Bender for these new alleged crimes because of scarce resources or
because such a prosecution would depend on the statements of inmate
witnesses, who might lack credibility.  But these considerations do not
outweigh the significant countervailing constitutional values.

## III.

For these reasons, the judgment of the district court is
<u>affirmed</u>.