OPINION OF THE COURT
Kenneth R. Fisher, J.
*253 Defendant moves to suppress the recorded statements he made to his ex-wife, the mother of the alleged complainant, in which he attempted to bribe her to refrain from testifying against the defendant in regard to four-year-old child sex abuse charges. Defendant, who was arraigned in local criminal court on the child sex abuse charges some months prior to the bribe attempt, was ultimately indicted on charges relating to the above, and for the alleged bribe attempt. The People have represented that the statements referenced in the CPL 710.30 notice, “regarding any of the sexual allegations contained in the indictment,” will not be used in their case-in-chief on the rape, sodomy and sexual abuse counts of the indictment (counts 1-11). (See letter of Cara Briggs, Esq., dated Oct. 20, 2003.) But they maintain that defendant’s statements, evidently all of them (because the People do not specify any limitation), must be admitted on the bribery count (count 12). The People contend that these statements “are res gestae and therefore should not be the subject of the Huntley hearings.” (People’s answering affirmation of Aug. 26, 2003 at 12, citing People v McCaskell, 217 AD2d 527 [1st Dept 1995]; People v McFadden, 126 AD2d 970 [4th Dept 1987]; People v Wells, 133 AD2d 385 [2d Dept 1987].)
The cited cases are helpful, but not dispositive of defendant’s claims. Defendant’s moving papers and supporting exhibits establish the following: Just before the grand jury was to hear defendant’s case, Janet Roman, the complainant’s mother, complained to the police that the defendant, her ex-husband, called her at work and offered her money for not showing up in the grand jury, and preventing the child from testifying. The police reported this to the district attorney’s office and, after consultation, determined to have Roman elicit further recorded conversations along this line from the defendant. On June 2, 2003, well after defendant retained counsel on the child sex abuse charges, and turned himself in for arrest and arraignment before Town Justice Pupatelli, Roman was outfitted with a body wire and approached the defendant to engage him in conversation.
In the recorded conversation, defendant is said to have offered Roman $15,000 in exchange for her agreement not to testify in the grand jury. According to the CPL 710.30 notice, Roman questioned defendant extensively about the underlying sex abuse and rape charges. Defendant would not discuss them, but promised to do so if Roman took the money, and he offered to move to another state, where the complainant and her mother would never see him again, as an additional incentive. The no *254 tice alleges that the defendant told Roman that he wouldn’t go to jail for the complainant, or anyone, that he never intended to hurt the complainant, and that she was coached and was exaggerating.
The People have not challenged defendant’s recitation of the facts in their responding papers. They do not contend that the recorded conversation on June 2nd was spontaneous or volunteered, and in particular the People have not denied that the recorded conversation was made to a police agent and occurred at the behest of the police. (People v Stroman, 286 AD2d 974, 975 [4th Dept 2001]; People v Eberle, 265 AD2d 881, 882-883 [4th Dept 1999]; cf., People v Smith, 262 AD2d 1063 [4th Dept 1999]; People v Dabney, 75 AD2d 822, 823 [2d Dept 1980].) The People’s letter of October 20, 2003 evidently recognizes that none of these statements are admissible on the first 11 counts of the indictment under the state constitutional rule of People v Samuels (49 NY2d 218 [1980]) and People v Settles (46 NY2d 154 [1978]), because the conversation occurred after commencement of formal criminal proceedings in criminal court on the child abuse charges. In addition, they are inadmissible under the state constitutional rule of People v Skinner (52 NY2d 24 [1980]), because defendant retained counsel on this specific matter before his arraignment in local criminal court, who told him not to talk with the police, a directive which defendant relayed to the police when they attempted to interview him in mid-December of 2002, and which was duly recorded in the police reports attached to defendant’s moving papers. The People do not contend that the police, on June 2nd when the recordings were made, were unaware that defendant was represented by counsel on the child sex abuse charges. For all of these reasons, a hearing is unnecessary.
The People’s effort to use the statements in a consolidated trial of the 12th count, charging bribery of a witness, requires an examination of the federal and state constitutional right to counsel rules, and the peculiarities of CPL 200.20 (3). In People v Bongarzone (69 NY2d 892 [1987]), the Court held that two sets of charges like this, each relevant on a trial of the other, once consolidated by the People in an indictment, may not be severed on motion of the defendant. (Id. at 895 [“the court lacked statutory authority to sever”], citing CPL 200.20 [3] and People v Lane, 56 NY2d 1, 7 [1982]; see also, People v Gaines, 293 AD2d 550 [2d Dept 2002]; People v Fontanez, 278 AD2d 933 [4th Dept 2000]; People v Van Duser, 277 AD2d 1034, 1035 [4th *255 Dept 2000].) Defendant’s motion to sever is, accordingly, denied (without prejudice to renewal if the People reevaluate their position in light of the decision below).
A. Admissibility under the Sixth Amendment
Defendant’s Sixth Amendment right to counsel on the child sex abuse charges attached upon the filing of the felony complaint, which commenced the proceedings in town court, and defendant’s arraignment thereon. (Brewer v Williams, 430 US 387, 398-399 [1977]; Kirby v Illinois, 406 US 682 [1972] [plurality op]; Meadows v Kuhlmann, 812 F2d 72, 76-77 [2d Cir 1987]; People v Hawkins, 55 NY2d 474, 487 [1982]; People v Blake, 35 NY2d 331, 339-340 [1974]; cf., Murphy v Lynn, 118 F3d 938, 944 [2d Cir 1997].) It had not yet attached on the bribery charge at the time Roman engaged in the recorded conversation with defendant. (People v Bell, 73 NY2d 153, 162 [1989].) Therefore, the recorded conversation would be admissible in a separate trial of the bribery count, but not admissible in a trial of the child sex abuse counts, whether consolidated with the bribery count or otherwise. This requires some explanation.
Under the Sixth Amendment, admissibility on the bribery charge is well settled. (Texas v Cobb, 532 US 162 [2001]; People v Ferrara, 54 NY2d 498, 506 [1981] ["Use of undercover operatives to investigate criminal activity of a suspect prior to commission of the particular crime of which the suspect is subsequently charged simply does not violate the Sixth Amendment guarantee”].) Admissibility on the bribery charge, however, does not answer whether the conversation, which also concerned the abuse charges on which criminal proceedings had begun and defendant’s right to counsel attached, may be admitted on a consolidated trial of both sets of charges.
When the Sixth Amendment is violated, typically by making such tape recordings after commencement of formal proceedings, the rule is that the recorded bribe attempt is not admissible on a consolidated trial of the underlying, or prior, offense on which defendant was formally charged. (See Maine v Moulton, 474 US 159 [1985]; People v Bongarzone, 69 NY2d at 895 [applying Maine v Moulton in a federal right to counsel case]; People v Lumaj, 298 AD2d 335 [1st Dept 2002] [same].)[1] This was not always the case in the New York decisions. Starting *256 with People v Middleton (54 NY2d 474 [1981] [state right to counsel]) and People v Mealer (57 NY2d 214 [1982] [federal right to counsel]), the question of admissibility of government recorded statements of the defendant showing consciousness of guilt, such as bribes, peijury, or witness intimidation, on a trial of the crimes on which defendant’s right to counsel attached or had been invoked when the recordings were made, turned upon a multifactor analysis of whether the government agent’s questioning of the defendant was directed primarily at obtaining evidence of the “new crimes” of suborning peijury, witness intimidation or bribery. (See e.g., People v Bell, 73 NY2d at 161-162.) This formula was cast aside when the Second Circuit held in Mealer v Jones (741 F2d 1451 [2d Cir 1984]) that, despite People v Mealer (supra), Mealer’s federal constitutional rights were violated. Under the new approach, notwithstanding that the government agent’s questioning of the defendant focused on the “new crimes distinct from those for which the accused was already under indictment” (id. at 1454), and notwithstanding “that the government had a good faith interest in investigating [the] new crime of suborning perjury” (id. at 1455), any use of the statements thereby obtained as proof of the already charged or “past crimes” would violate the Sixth Amendment. (Id. at 1454 [“any doubt that the holding of Massiah was meant to apply also to statements concerning the indicted offense made in the course of an investigation into ‘new crimes’ appears to have been resolved in the affirmative in Beatty v. United States, 389 U.S. 45, 88 S.Ct. 234 (1967), 19 L.Ed.2d 48, revg. 377 F.2d 181 (5th Cir.1967)”].)
In so holding, the court rejected the idea that it mattered whether “ ‘the police investigation into the new crime was not used as a pretext for circumventing defendant’s rights’ ” on the pending or old charge. (Mealer v Jones, 741 F2d at 1455, quoting People v Mealer, 57 NY2d at 218.) Even if the government agent’s questioning focused exclusively on the new crime, the Sixth Amendment would be violated with respect to the charged crime, because “the government [is presumed to] kno[w] that any statements made in the course of suborning peijury would necessarily incriminate [the defendant] on the murder charge *257 as well . . . [and] that any discussion between [the defendant and the government agent] would almost certainly incriminate [defendant] on th[at] old crime.” (741 F2d at 1455.) Thus, while “the government is free to undertake such an investigation anyway without counsel present, and introduce at trial on a new charge any incriminating statements thereby obtained from an accused” (id.), the prosecution may not use such statements on a trial of the already indicted or past crimes. (See also, Maine v Moulton, 474 US at 179-180 [gathering evidence of both new crimes and past indicted crimes is often a necessary byproduct of otherwise legitimate investigation of the new crime, but “(i)n seeking evidence pertaining to the pending charges . . . the government’s investigative powers are limited by the Sixth Amendment rights of the accused”].)
This approach recognizes that the police must be permitted in the public interest to investigate crimes relating to subversion of the criminal justice system, even if a defendant’s right to counsel on pending charges necessarily will be violated. The issue is one of remedy: While “excluding] evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public’s interest in the investigation of criminal activities^] . . . incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, notwithstanding the fact that the police were also investigating other crimes.” (Id. at 180; see also, United States v Bender, 221 F3d 265, 269 [1st Cir 2000] [“(s)o long as the statements were incriminating as to the pending charges and were deliberately elicited by government agents, they cannot constitutionally be admitted in the trial of those charges”]; id. at 270 [“That the government might have other legitimate reasons for confronting a person who is accused does not eliminate the violation of the right as it pertains to the pending charges”].) The remedy for a Sixth Amendment violation is suppression in a consolidated trial of the old and new charges. (People v Bongarzone, supra; People v Lumaj, supra.) On the other hand, “[n]othing prevents the government from prosecuting [defendant] in a separate proceeding for subornation of perjury and the like.” (221 F3d at 271 [emphasis supplied], citing Maine v Moulton, 474 US at 180 n 16.)
B. Admissibility under New York’s Samuels/Settles Rule
As the foregoing demonstrates, at least with respect to the federal Sixth Amendment issue, the paradigm of People v Mealer *258 (supra) and People v Middleton (supra), which permitted admission of the recorded investigation of the new crime in a trial of the charges for which defendant was indicted at the time the recordings were made, if the investigation focused on the new crime only and was not a pretext to circumvent defendant’s right to counsel on the old crime, is abrogated by Maine v Moulton (supra). The Court of Appeals has not, since Mealer and Moulton addressed the issue in a strictly Samuels ¡Settles right to counsel case. I find, however, that there is no reason to believe that defendant’s remedies under the state constitutional rule of Samuels ¡Settles are any less broad in scope than those provided under its federal analogue. (People v West, 81 NY2d 370, 373 [1993] [describing Kirby v Illinois as involving a “parallel Federal right”].)[2]
Accordingly, and following the “parallel” Maine v Moulton and People v Bongarzone formula, Roman’s recorded conversation with the defendant may not be admitted in a consolidated trial of the abuse charges and the bribery count. Because the court has no discretion to sever in the face of the People’s opposition thereto, the motion to suppress is granted unless the People consent to severance of the bribery count, in which case the motion is granted on the first 11 counts, and denied on the putatively severed 12th count. There is no Sixth Amendment or Samuels ¡Settles impediment to admission on a separate trial of the bribery, because defendant’s Sixth Amendment and Samuels/ Settles rights had not attached by commencement of formal criminal proceedings on the bribery charge when the recordings were made. (People v Bell, 73 NY2d at 162.)
C. Admissibility under the Skinner Rule
*259 Because Samuels/Settles does not by itself require suppression of any part of Roman’s recorded conversation with the defendant in a separate trial of the bribery charge, even if it also concerned the past charges (People v Ruff, 81 NY2d 330 [1993]; People v Kazmarick, 52 NY2d 322, 327 [1981]; People v Acosta, 259 AD2d 422, 422-423 [1st Dept 1999]), it is necessary to consider defendant’s motion addressed to the fact that, unlike in Ruff and Kazmarick, he actually retained counsel on the abuse charges and that, therefore, suppression is required under the separate rule of Skinner. Defendant retained counsel on the abuse charges in December of 2002, who told defendant not to talk to the police, a directive relayed by defendant to the police and which was recorded in the police reports. (People v West, 81 NY2d at 379 [“appearance was reflected in their files”].) He also appeared with counsel for arraignment on the abuse charges in town court when he turned himself in.
The case of People v Bell (supra) involved an application of the Skinner rifle to the factual scenario of this case. In Bell, as in this case, a government agent engaged defendant in recorded conversation about his attempt to bribe a witness into not testifying about a case on which defendant retained counsel. On one level, the court adopted the formula of Mealer v Jones and Maine v Moulton for the Skinner right to counsel context, because it found “no sound reason for extending that right to protect a defendant against incriminating himself in a new unrelated crime.” (People v Bell, 73 NY2d at 162; see also, People v Candelario, 209 AD2d 977, 977 [4th Dept 1994] [separate trial of bribery and associated counts after plea of guilty to the original charges: “right to counsel is not violated where, as here, defendant initiates a bribe offer in counsel’s absence and defendant responds to further inquiry and investigation concerning that bribe offer” (emphasis supplied)].) But central to this holding was the finding that the government agent in Bell did not “interfere with defendant’s representation” on the prior matter, and that he “did not question defendant about the crime for which he had obtained representation.” (73 NY2d at 162.) Here, the government agent questioned the defendant about the pending charge. Therefore, her recorded conversation with the defendant on the topic of the abuse charges is inadmissible even on a separate trial of the bribery count under Bell and Skinner, which emphasized the ethical obligation of the People not to communicate with a represented defendant “on the subject of the representation.” (People v Skinner, 52 NY2d at 29, quoted *260 in People v Bell, 73 NY2d at 160; see also, id. at 162.) In other words, while Samuels/Settles is “offense-specific” (People v Ruff, 81 NY2d at 333-335; People v Kazmarick, 52 NY2d at 327-328; People v Harvey, 273 AD2d 604, 605 [3d Dept 2000]; People v McNear, 265 AD2d 810 [4th Dept 1999]; see also, People v Burdo, 91 NY2d 146, 158 [Wesley, J., dissenting]), the Skinner rule is not, and the latter reaches out to suppress those conversations with government agents which interfere with defendant’s representation in another matter.
Because the decision in Bell is premised on the fact that defendant was not questioned on the prior pending charges for which he had representation, Bell requires suppression here of those portions of Roman’s conversation with the defendant which concerned the subject of the prior representation, even on a separate trial of the bribery count. Those portions which concerned the bribery itself, however, are admissible on a separate trial of the bribery count. In other words, suppression of the whole conversation is not necessary by reason of the Skinner violation; that portion of the recorded conversation which “was in furtherance of the investigation in connection with the bribe offer,” and therefore not the subject of any prior representation, may be admitted. (Cf., People v Jacobs, 196 AD2d 831, 832 [2d Dept 1993].)
There is one branch of the Skinner rule, which defendant contends is applicable here, which must be distinguished. It has been established, at least since People v Townes (41 NY2d 97 [1976]), that, where defendant is represented by counsel on one matter and where “questioning on the unrepresented matter would all but inevitably elicit incriminating responses regarding the matter in which there had been an entry of counsel[,] . . . interrogation on the unrepresented crime is prohibited even in the absence of direct questioning regarding the crime on which counsel had appeared.” (People v Cohen, 90 NY2d 632, 638-639 [1997] [emphasis supplied]; see People v Middlebrooks, 300 AD2d 1142 [4th Dept 2002]; People v Walker, 285 AD2d 660, 663 [3d Dept 2001].) These cases, however, usually applied in the custodial interrogation context, have never been applied to the scenario in this case. The Skinner right “cannot be distorted to immunize one represented by an attorney against investigative techniques that capture a new crime in progress.” (People v Ferrara, 54 NY2d at 508-509 [emphasis supplied].) Otherwise, defendants, with impunity, would be emboldened to intimidate or bribe witnesses, and suborn perjury, secure in the knowledge *261 that any surreptitious attempt to record the same by the police will inevitably result in admissions to the underlying charged offenses. (People v Bell, 73 NY2d at 160-161 [reaffirming Ferrara], 162 [“no sound reason for extending that right to protect a defendant against incriminating himself in a new unrelated crime”].) While it is true that Roman asked questions about the charged sex abuse offenses, suppression of defendant’s responses thereto is sufficient to satisfy the Sixth Amendment right to counsel, its state counterpart, and Skinner’s protection of the existing lawyer-client relationship.
Conclusion
Should the People elect not to oppose severance of the bribery count, the motion to suppress defendant’s recorded conversation with Roman is granted in part and denied in part as specified above. Should the People elect to maintain their opposition to severance, the motion to suppress is granted in its entirety.

. The latter two cited cases held that admission of the tape recording in the consolidated trial was harmless error beyond a reasonable doubt in Bongarzone because the “recorded conversations contained no reference to the [originally charged incident] or to any of the charges arising from it, and evi *256 dence of guilt with respect to the initial crimes was direct and overwhelming. ’’(People v Bongarzone, 69 NY2d at 896.) As stated above, in this case, the recorded conversation concerned the abuse charges, and in any event the harmless error standard is not applicable on a motion to suppress or in limine prior to trial.

. It is true that, as the dissent in Middleton demonstrates, the original articulation of the state constitutional rule in that case applicable to this context carved out a categorical exception for legitimate new crimes investigation which treated the gathering of statements such as these, in the abstract and for all purposes and all prosecutions, as either violative of the state right to counsel or not. Yet Maine v Moulton established for Sixth Amendment purposes that the right to counsel “does not fasten itself irremovably from an incriminating statement, making that statement either admissible or inadmissible for all time [because the Sixth Amendment right to counsel] governs the interactions between the government and the accused once the adversarial process has begun in a particular case[;] [i]n other words, ‘[t]he Sixth Amendment right ... is offense specific.’ ” (United States v Bender, 221 F3d at 270 n 4, quoting McNeil v Wisconsin, 501 US 171, 175 [1991].) The same must be true for the Samuels/Settles rule if indeed it is, as the court said in West, a “parallel” constitutional right. (People v West, 81 NY2d at 373; see also, discussion in part C below.)